# Henry *against* Horstick.

A purchaser of real estate sold by an order of the orphans' court in a proceeding in partition by an administrator, having been compelled to pay a tax which had been assessed before he purchased, can not recover the same back from the administrator.

*Semble*, that the heirs to whom the land passed by descent, and who were the owners of it at the time of the assessment, are personally liable.

ERROR to the common pleas of *Dauphin* county.

John Horstick against Christian Henry, surviving administrator of George Henry, deceased. This case was brought into the court of common pleas by appeal from the judgment of a justice of the peace, and the following case was stated as a special verdict:—

George Henry died intestate on the 28th of July, 1830, seised of a plantation and tract of land, situate in Derry township, Dauphin county.

On the 10th of June, 1831, John Henry, one of the administrators, &c., of the deceased, paid to Christian Foltz, the collector, the county-tax assessed upon it and then due.

Prior to the 6th of December, 1831, the real estate, of which George Henry died seised as aforesaid was valued and appraised by an inquest held for the purpose on the day the inquisition was confirmed, and all the heirs refused to accept it at the valuation, and an order was issued to the administrators to sell the same who gave security.

On the 31st of January 1832, they reported to the orphans' court of Dauphin county that the premises remained unsold, whereupon that court issued their *alias* order to the administrators of the deceased to make sale of the real estate on the 3d day of March then next.

[Henry v. Horstick.]

Which sale accordingly took place, and John Horstick became the purchaser. The sale was confirmed upon the 1st of May 1832, and the deed executed by the administrators to him on the 15th of June 1832. A state tax of two dollars and sixty-four cents, and a county tax of twelve dollars and eighty-one cents was assessed on the premises in the winter of 1832, in the latter end of January as the assessor thought. The notice of the assessment and appeal was as follows:

" Mr. George Henry's estate.     Sir:—Take notice that your county-tax for the present year is twelve dollars and eighty-one cents, being at the rate of forty-eight cents to the one hundred dollars. An appeal will be held at the house of Martin Hocker, on the 8th day of March next.     Christian Foltz, Assessor.

" Derry Township, February 7th 1832."

The precept of the triennial assessment was issued by the commissioners on the 9th day of November 1831, and the assessments having been made by the assessor and assistant assessors were returned to the commissioner's office of Dauphin county; on the receipt of which the commissioners proceeded to quota the township, and on the 7th day of February 1832, they caused transcripts of the assessments of Derry township to be made out and transmitted by their clerk to the township assessor, who thereupon gave the notice, of which the foregoing is a copy to John Henry, one of the administrators of George Henry, deceased.

The assessment was in the name of George Henry, deceased, no alteration having been made at the appeal. The commissioners appointed Christian Foltz collector of Derry township, to whom on the 1st day of April 1832, the commissioners issued their warrant with the duplicate for the collection of the taxes assessed. Mr. Foltz, the collector, called upon John Henry, one of the administrators of George Henry, and demanded the taxes. He refused to pay it, saying they had sold the land to John Horstick, and he had to pay the tax. He then went to Horstick, and told him what Henry said. He said he would not pay it, and directed Mr. Foltz to go to John Henry. He called on Henry again who refused to pay it. He then saw Horstick and informed him what Henry said, declaring that he (Foltz) must go according to law to collect it. He then went to the commissioners at Harrisburg for directions, and in pursuance of their instructions, he again called on Horstick for the tax, declaring that he would distrain and sell his goods, if the tax was not paid. Mr Horstick then paid him the tax, declaring at the time that he would try and get it of Mr Henry again. The plaintiff having then paid the taxes amounting to fifteen dollars and forty-five cents, sued the administrators before a justice of the peace for the amount, and the case comes up by appeal from his judgment.

Since the appeal John Henry, one of the administrators, has died, and his death had been suggested upon the record. If on all the facts the plaintiff is entitled to recover, judgment is to be entered

for the amount so paid with interest and costs. If not, then judgment to be entered for defendant.

The court below rendered a judgment for the plaintiff for the amount of his claim.

*Herman Alricks* and *Weidman,* for plaintiff in error, cited 12 *Serg. & Rawle* 300; 9 *Serg. & Rawle* 114; 1 *Watts* 506; 3 *Watts* 328; 1 *Esp. Dig.* 98; 17 *Serg. & Rawle* 392; 8 *Watts* 214; 11 *Serg. & Rawle* 441; 3 *Penn. Rep.* 185; 8 *Serg. & Rawle* 347.

*Kline,* for defendant in error, cited 2 *Watts* 422; 10 *Serg. & Rawle* 254; 1 *Harr. Dig.* 153; 3 *Watts* 222; 9 *Serg. & Rawle* 109; 2 *Watts* 222.

The opinion of the court was delivered by

KENNEDY, J.—We concur in the opinion expressed by the court below, that the goods of the plaintiff there found upon the land, he being the tenant in possession of it, were liable to be distrained on for the taxes assessed thereon before he took possession or became the owner of it. The act of assembly, passed in relation thereto, will, we think, admit of a construction which would authorize a distress of the goods of the party in possession of the land in such case; and the act being, in this respect, remedial, ought therefore to be construed literally, in order to make the remedy provided by it effectual in all cases. This being the case, the payment of the taxes by the plaintiff below cannot, with propriety, be deemed voluntary. He was placed in a situation that left him no alternative, but either to pay the taxes or to suffer his goods to be distrained and sold for the purpose of satisfying them. To require that he should submit to the latter before he should be permitted to claim to be reimbursed, would be altogether unreasonable and unjust, because it would only be accumulating costs and expenses most unnecessarily, seeing he could not avoid the payment, nor yet afford the least benefit to any one by doing so, unless it were the officers of the law. But in the opinion of the court below, that the defendant there was liable to reimburse the plaintiff the amount paid by him, in discharge of the taxes assessed, we cannot concur. It is admitted, and correctly too, that they were not a charge upon the land; neither were they a charge against any person or persons except the owner or owners of it. It does not appear, however, from the case as stated, that the defendant below was the owner or had any interest in the land at the time the taxes were assessed. He appears to have been merely one of the administrators of a former owner of it, who died seised thereof some seventeen months or more before the taxes were assessed. It seems that he died intestate, when the land passed to his heirs by descent, and they, as it appears, were the owners of it at the time it was assessed, and until it was sold to the plaintiff below. As owners of the land, I

[Henry v. Horstick.]

am rather inclined to think, the heirs were personally liable to pay the taxes, though the assessment appears to be very defective, in not designating the heirs either *eo nomine* or *nominatim* as owners of it, but in these words, " Mr George Henry's estate," which probably would be thought by many as showing that the land was the property of George Henry, and that he was in full life at the time. This, however, the case shows was not the fact. Although the taxes were not a charge upon the land, yet it is said that the payment of them appertained to the trust committed to the administrators, under the authority conferred upon them by the order of the orphans' court, to sell the land. Now it is manifest, that their trust extended no further than the execution of the purpose for which the order giving them the authority to sell the land was made. It is certain that the object and design of the order of sale was merely to make partition of the estate among the heirs and those interested in it, according to their respective rights and portions therein. The land itself not being susceptible of partition among the heirs without injuring the value of it, was therefore appraised and valued; but no one of the heirs being willing to take it at the appraisement, an order was, therefore, made by the court, at their instance, authorising the administrators of their ancestor to sell it. And for what purpose? let me ask. Clearly for the purpose of converting it into money; and, after defraying all the costs and charges attending the proceeding and sale out of the money, of distributing the residue among the heirs, according to their respective interests therein. The money after the sale becomes a substitute for the land, and, instead of the land, it is to be parted and divided among the heirs in the same proportions that the land itself would have been, had it been practicable, without injuring the value of it, to have done so. The taxes in this case could, at most, only have been considered as a personal charge against the heirs. Then, upon what principles can it be sustained, that the administrators were bound to pay the individual debts, or the joint debts owing by the heirs, which were in no wise a charge upon the land? It was clearly not their business to know, nor to inquire whether or not the heirs were indebted, and if they were, to pay their debts so far as their respective portions of the money might enable the administrators to do so. In doing so they would clearly have transcended their authority and rendered themselves liable to pay the heirs out of their own funds. I wish now to be understood as speaking of debts against the heirs, which were not a charge against the land. And why taxes, owing by the heirs, not a charge upon the land, but against the heirs themselves personally, should be looked after and paid by the administrators, when it would be considered a breach of trust on their part, to pay, with the money, any other debts of the heirs, chargeable only against them personally, I am unable to discover. The taxes are no part of the expenses attending the execution of the trust or the authority committed to

[Henry v. Horstick.]

the administrators in such case, and cannot be brought in and paid under that head; nor can I perceive that they have any connection with the discharge of the duty imposed upon the administrators by the decree of the court, made for the sale of the land. If the defendants below were heirs at law also of their intestate, and they had been sued by the plaintiff in this action as the owners of the land at the time of the assessment, it may be that he would have been entitled to recover. But the case does not show that they were the owners, or even part owners, or tenants in common with others, of the land, and consequently upon this ground, it would seem, the claim of the plaintiff was not, and, perhaps, with truth could not have been made. We, therefore, are of opinion that the plaintiff below is not entitled to recover in this action; and, therefore, reverse the judgment rendered in his favour.

Judgment reversed.