## Rutherford's Case.

1. The Act of May 9th 1871, providing for reopening drains in lands which have once been drained, on the application of contiguous owners and at the expense of the owner of the land on which is the drain, is unconstitutional.

2. The act provided for an *ex parte* appointment of commissioners to view and determine whether the land could be redrained, report what drains should be made, their dimensions, &c. ; the act required no notice to the landowner as to appointment of the commissioners or their report, on the filing of which the owner is to be ordered to open the drains within a given time under a daily penalty. This is not due process of law and is contrary to the Bill of Rights.

3. In cases where a law omits to require notice and it might be supplied by actual notice, such notice must be *judicial* notice.

4. The legislature cannot impose unjust, arbitrary and grossly unequal burdens upon individuals, even for a public purpose.

5. Washington Avenue, 19 P. F. Smith 352, followed.

May 23d 1872. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ.

Certiorari to the Court of Quarter Sessions of *Dauphin county :* No. 27, to May Term 1872.

This proceeding was commenced September 2d 1872, by the petition of William Rutherford, to the Court of Quarter Sessions, under the Act of May 9th 1871 (Pamph. L. 263), entitled "An act for redraining wet and swampy lands."

The act provides:

Sec. 1. That any contiguous swampy or wet lands belonging to several owners disjointly, which have once been drained and the drain or drains are not property opened and in good condition, shall be redrained under the following regulations.

Sec. 2. On the petition of an owner of such lands, the Court of Quarter Sessions shall appoint three disinterested commissioners, with power to view the lands described in the petition, and if in their judgment to redrain them, shall be practicable, they shall

[Rutherford's Case.]

report to the court setting forth the names of the owners through whose land the drain needs to be reopened and attach a draft of the drains to be reopened with their dimensions.

Sec. 3. On presenting the report, the court shall order a notice to be served by a constable on the landowners through whose land the drains need to be reopened, ordering him to open the same through his land at his own expense, according to the draft attached to the commissioners' report within a time to be fixed by the court, not exceeding sixty days.

Sec. 4. The constable within ten days after the time set by the court, shall make return to the clerk of the court, of the service of the notice and the compliance or non-compliance with its order; and if he return that the order has not been complied with, a penalty of $10 a day from the time of filing the constable's return, until the drain shall be reopened, shall be imposed upon the non-complying owner, recoverable in the name of the Commonwealth, by the petitioning owners, when over $50 shall become due, one-half to the person suing and the other half to the use of the directors of the poor.

Sec. 5. The costs of the proceeding to be borne by the party through whose land the drains may be so reopened.

Rutherford's petition set forth : " That there are contiguous swampy or wet lands belonging to the several owners, disjointly, viz. : James Young, Wm. W. Rutherford and James B. Henderson, situate, &c., which have once been drained, and that he is one of the owners of said lands, and that the drain or drains passing through the lands of James Henderson, who is also one of the owners of said lands, are not properly opened and in good condition, thereby preventing the free passage of water through said ditches into the Susquehanna river, and damaging the adjoining lands ;" and praying for the appointment of commissioners under the act.

On the 6th of September the court appointed three commissioners, who reported that having viewed the lands mentioned in the petition, they found that it was practicable to redrain them, and for that purpose the drains on the lands of Rutherford and Henderson should be opened to the main channel. They then reported the manner in which the drains should be made and their dimensions, &c., and accompanied their report with a draft.

The report was filed October 4th, and on the 7th of October Henderson filed the following exceptions in the Quarter Sessions :—

1. Because private property is taken for a private use and purpose without an equivalent.

2. Because the property of one citizen is taken and transferred to another by an ex parte proceeding.

3. Because a duty is enjoined and a penalty imposed upon one

[Rutherford's Case.]

person, for the private benefit of another, at the costs and expense of the former.

4. Because a person's property cannot be taken for private purposes, even with compensation.

5. Because an act is required to be done by one person, to his great inconvenience and loss, without any notice given to him. All which acts to be done and performed by him he believes are contrary to the spirit of the Constitution and the law of the land.

The court (Pearson, P. J.) overruled the exceptions and directed that an order to open the drains be issued.

Henderson removed the proceedings to the Supreme Court by certiorari, and assigned for error, that :

" The Act of 9th May 1871, on which these proceedings are based, is unconstitutional and void ; and the court erred in exercising jurisdiction under it."

*J. H. Weiss, L. W. Hall* and *F. Jordan*, for certiorari.—The Act of Assembly is not a legitimate exercise of legislative power. It provides for no notice to parties interested, no hearing in court or elsewhere, no approval by the court of the action of the commissioners, and no right of appeal. By the Constitution of the United States, Article 5, no one " shall be deprived of life, liberty or *property*, without due process of law." By section 9, Article 9 of the Constitution of the state, no one " can be deprived of his life, liberty or ⸜*property*, unless by the judgment of his peers, or the law of the land."

An Act of the Legislature is not such a law : Norman *v.* Heist, 5 W. & S. 171; Greene *v.* Briggs, 1 Curtis 311 ; Taylor *v.* Porter, 4 Hill 146. " In order to the validity of any judicial trial, the parties interested should be informed of of the nature and cause of the charge and have an opportunity to answer and defend :" State *v.* Snow, 3 Rhode Island 64; Greene *v.* James, 2 Curtis 187 ; Brown *v.* Hummel, 6 Barr 86. A statute is constitutional or not as it passes the legislature; and its validity cannot depend on what may be done or omitted by others after its enactment. ' Judicial proceedings according to the course of the common law,' means that the right of a person to his life, liberty or *property*, shall not be divested, except by a judicial determination *after due notice in pursuance of a general law :*" Mason *v.* Messenger, 17 Iowa 261, 267 ; James *v.* Reynolds, 2 Texas 251 ; Van Zant *v.* Waddell, 2 Yerg. 270, 605 ; Jones *v.* Perry, 10 Id. 59 ; Budd *v.* State, 3 Humph. 483 ; Holden *v.* James, 11 Mass. 396 ; Dartmouth College *v.* Woodward, 4 Wheat. 518 ; White *v.* White, 5 Barb. S. C. 481 ; Bank of Columbia *v.* Okely, 4 Wheaton 235; Woodcock *v.* Bennet, 1 Cowen 740 ; Hoke *v.* Henderson, 4 Dev. 15 ; Ervine's Appeal, 4 Harris 256 ; Arrowsmith *v.* Burlingin, 4 McLean 498 ; Reed *v.* Wright, 2 G. Green 22 ; 3 Story on

[Rutherford's Case.]

Const. U. S. 661; 2 Kent's Com. 13; Palairet's Appeal, 17 P. F. Smith 479; Empire City Bank, 18 New York 199, 215; Rockwell v. Nearing, 35 Id. 302. The right of eminent domain, or inherent sovereign power, gives the legislature the control of private property for the *public* use:" Pittsburg v. Scott, 1 Barr 309; Bloodgood v. Railroad Company, 18 Wend. 14; Lambertson v. Hogan, 2 Barr 22; Philadelphia Association v. Wood, 3 Wright 73; Schafer v. Eneu, 4 P. F. Smith 304; Cooley's Cons. Lim. 530, 531.

*O. F. Johnson,* contrà.—To make an Act of Assembly unconstitutional, it must bear upon its face a direct inconsistency with the letter of the Constitution: Sharpless v. Philadelphia, 9 Harris 147; Monongahela Navigation v. Coons, 6 W. & S. 100; Phila. & Trenton Railroad Co., 6 Wharton 25; Watson v. P. & C. Railroad Co., 1 Wright 469.

The state Constitution must have a liberal construction, and whatever is not prohibited by it the legislature has jurisdiction of: Commonwealth v. Hartman, 5 Harris 118; Lewis & Nelson's Appeal, 17 P. F. Smith 153; Commonwealth v. Maxwell, 3 Casey 444; Philadelphia v. Field, 8 P. F. Smith 320.

The opinion of the court was delivered, July 13th 1872, by

AGNEW, J.—The Act of 9th May 1871, P. L. 263, cannot be supported as a proper exercise of legislative power. It infringes the right of private property contrary to the true intent and meaning of the 9th article of the Constitution. We have had occasion lately, to discuss the inviolable character of this right, in the case of Washington Avenue, 19 P. F. Smith 352, and will not repeat what was then said. It is not competent for the legislature to impose unjust, arbitrary and grossly unequal burthens upon individuals even for a public purpose; and it is less so, when the purpose is private and the proceeding not in due course of law, and highly penal; as in the present case. Before discussing the objectionable features of the act, it is proper to distinguish it in some respects, that we may not seem to decide more than the case before us. This act applies to contiguous swampy lands belonging to *several owners disjointly,* and that have been once drained. There is nothing in the law, or in this proceeding, to indicate that the owners of such adjoining lands are under a common duty to drain their lands, either by contract with each other, or by reason of a burthen imposed, by a common predecessor in an entire title, under which all claim their several parts. We intend to express no opinion upon such a case, or to say that a remedy may not be provided for a specific performance of such a duty. In the opinion of the judge, it is said that the deeds, under which Mr. Henderson the defendant claims, require the drainage to be done.

[Rutherford's Case.]

This, however, is not set forth in the petition or other part of the record, and if it had been, it does not appear that there is any privity in title or covenant, between William Rutherford and the defendant, which would entitle the former to enforce the duty against the latter by action or otherwise. The presumption would be different, arising from the recital that he is the owner of the adjoining tract, *disjointly* from the defendant. There is, therefore, nothing in the act or the case itself, except that these lands have been once drained; but upon what terms or whether a continuing duty exists, it does not appear. The case therefore stands simply in the attitude that a law commands an owner of land, by a several and unconnected title, at his own expense, to drain his land, for the private and individual benefit of his neighbor, in the manner and to the extent that commissioners shall direct, in a proceeding *ex parte*, and without notice to him, under a penalty of ten dollars a day, for his omission to drain it, after notice of the *ex parte* determination of the viewers, and a certain time elapsed. Without a duty to redrain set forth and proved, clearly no law can compel a several owner of land disjointly from others, to reopen drains at his own expense for the benefit of others. This is an interference with private right not within the grant of legislative power. True, it may be greatly to his neighbor's advantage he should do this; and so it would be to keep an open way in good repair over his land, for his neighbor's benefit, and which his neighbor had been using, but without title. But men purchase land with their eyes open, and if it be swampy or hilly, or stony, or otherwise less valuable than their neighbors', they take it as it is, and cannot call upon their neighbors to help them to level it, or drain it, or pick the stones from it. Of course we do not refer to that police power of the state, which for the purpose of preserving the public health, or any other legitimate public necessity, enables the legislature to drain unhealthy swamps, or do other acts essential to the public welfare. The whole proceeding under this act is not only out of the course of the common law, but is out of the due course of law. It imposes a burthen without a duty, and without notice of the proceeding which imposes it; and for a refusal to bear it, it exacts a severe penalty without a previous trial. The law provides for the *ex parte* appointment of commissioners to view the land, determine whether it can be redrained, and report what drains shall be reopened with their dimensions, and a draft of the same. Of this no notice is required to be given.

On the report of the commissioners, the court shall immediately order a written notice to be served requiring the party to open the drain or drains through his lands as required by the commissioners, at his own expense and within a given time, not to exceed sixty days; and on failure to comply, then to pay a penalty of ten dollars a day, to be recovered in the name of the Common-

[Rutherford's Case.]

wealth, before a justice of the peace, in sums of fifty dollars, one-half for the use of the petitioner, and the other half to be paid into the county treasury for the use of the poor. Thus the first thing the landowner may know, he finds himself made liable to an imposition without trial or hearing, and subjected to a heavy penalty for not submitting to it. This is not due process of law. It is contrary to the Bill of Rights, and he is deprived of his money or its worth, without the judgment of his peers, and not according to the law of the land. It is true, the judge says in his opinion, that Mr. Henderson had actual notice of the proceeding. But no notice appears in the record, and such notice referred to is merely accidental. It is not judicial notice, or notice by virtue of any legal order. There may be cases where the omission of a law to provide for notice might be supplied by judicial action under the general powers of the court. But then the notice should be the act of the court, and should judicially appear in the record. But such was not this case. No authorities need to be cited for the general principles thus stated, and if any be sought for, the ample brief of the learned counsel of the plaintiff in error will supply all that may be required.

The judgment and order of the Court of Quarter Sessions are reversed and set aside, and the proceedings are quashed at the costs of defendant in error.