## Rutherford et al. *versus* Maynes.

1. The Act of April 12th 1760 (1 Sm. L. 227), and its supplement of January 13th 1804 (4 Sm. L. 109), relating to the Greenwich Island Meadow Company, are not unconstitutional.

2. These acts must, however, be strictly construed. The managers have just the powers, and none other, that are given expressly or by necessary implication.

3. The 2d section of the Act of January 30th 1804, which authorizes the managers to regulate the assessments and to collect the same by levy, distress and sale of the goods and chattels of the delinquent, in the manner prescribed by the Act of April 11th 1799, " such sum, if paid or recovered from a renter to be deducted from his rent," does not authorize a distress upon goods of a tenant to satisfy assessments imposed prior to his tenancy.

4. Henry *v.* Horstick, 9 Watts 412, distinguished.

January 12th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county:* Of January Term 1881, No. 132.

This was an action of replevin by Charles Maynes, who was tenant under Elizabeth L. Devine, against William Rutherford, treasurer of the Greenwich Island Meadow Company and James J. Keating, for certain goods and chattels distrained upon by the Greenwich Island Meadow Company for assessments levied upon the land of the said Elizabeth L. Devine, which were overdue and unpaid. The said Greenwich Island Meadow Company avowed, and James J. Keating made cognisance, as bailiff, for taxes in arrear.

The facts of the case were as follows: The Greenwich Island Meadow Company was organized with reference to nearly twelve hundred acres of meadow, marsh and cripple land, situate on the Delaware river in the county of Philadelphia, below the city, originally open to the overflowing of the tide, which has since been reclaimed by the erection of embankments, sluices, ditches, &c. The lands are owned by some thirty-three owners, few if any of whom reside on the land, which is mostly in the possession of tenants. The managers of the company are authorized by virtue

[Rutherford *v.* Maynes.]

of certain Acts of Assembly hereinafter particularly referred to, to rate, assess and collect from the owners or possessors, certain bank taxes or charges, &c., necessary to keep the said embankments in repair.   The plaintiff in April 1869 rented a tract of land on Greenwich Island from Mrs. Elizabeth L. Devine, the owner in fee.   At that time there was due to said company the sum of $461.25, for bank taxes or assessments levied for the years 1876, 1877 and 1878.   These assessments had been regularly demanded from Mrs. Devine, but remained overdue and unpaid.   On August 26th 1879, the plaintiff's goods on the premises, consisting of cows, horses, carts, household furniture, &c., were distrained for the overdue taxes at the instance of William Rutherford, treasurer of said company, whereupon the defendant brought this action of replevin.

Upon the trial, before LUDLOW, P. J., the plaintiff testified that he did not owe any rent to Mrs. Devine at the time of the levy, nor anything to the plaintiff as treasurer of the company   The defendants produced the minutes of the company, showing assessments upon the land for the years 1876, 1877 and 1878, and testified that a notice of levy was left at Mrs. Devine's house, and that the company waited thirty days before distraining, and that they had in other respects complied with the requirements of the Greenwich Island Enabling Act, passed April 12th 1760, recorded in book A, vol. 4, p. 182 (1 Sm. L. 227), and its supplement approved January 13th 1804 (4 Sm. L. 109).   The original act is entitled : " An act to enable the owners of Greenwich Island to embank and drain the same, to keep the outside banks and dams in good repair for ever, and to raise a fund to defray sundry contingent and yearly expenses accruing thereon."   The preamble recites : Whereas the improvement of meadow grounds is not only useful to the owners and possessors thereof, but is also of great benefit to the public.   And, whereas, there is a certain island or neck of marsh, meadow and cripple land, surrounded by Delaware river, Hollander's and Hay creeks, in the townships of Moyamensing and Passyunk in the county of Philadelphia, named and henceforth to be called Greenwich Island, which island is partly drained and partly open to the overflowing of the tide, the several owners of which propose by dams, sluices and floodgates, near the outside thereof, the whole completely to embank and drain.   But, forasmuch as such improvements are, from their own nature, subject to many casualties, and without constant care and expense not only liable to decay, but the defect of one part is often destructive and ruinous to many, and among a number of owners such frequent disputes arise concerning repairs, or concerning the means of defraying the necessary expense thereof, that oftentimes from little neglects great damages ensue, and the heavy charge of many owners rendered ineffectual through the default of a few ; to pre-

[Rutherford *v.* Maynes.]

vent which damages and inconveniences, and for the security and encouragement of said owners and undertakers of this improvement, it was enacted that certain persons therein named, "are hereby nominated and appointed, authorized and empowered" to divide the said tract into districts or divisions for the purpose of damming and banking, &c. The act made it the duty of the owners or possessors of lands in the said districts, to erect banks, sluices, floodgates, &c., and provided that the costs of maintaining the same should be paid by the owners or possessors of each district in proportion to the number of acres held by them respectively, and provided for the establishment of a fund to defray contingent and yearly expenses by the payment of such sums as the managers shall find necessary.

The act provided that payment of said assessments might be enforced by the treasurer by suit before a justice of the peace or in the Common Pleas, which tribunals were directed to give judgments and executions to be levied on the tract in default by delivering the land to the managers, who were authorized to let the same, until the rents arising therefrom should pay all arrearages.

The supplement of January 13th 1804, made it the duty of the managers, as often as it might be necessary, to estimate the expenses for making, repairing and keeping in good repair, all and every bank, &c., on the land, and to ascertain the names of owners and possessors thereof or their legal representatives, and to rate and assess each owner or possessor fairly and equally per acre. And such supplement further provided that the managers, after regulating the assessments, are to issue their warrant to the treasurer, authorizing and requesting him to receive from every owner or possessor, his or her legal representative, the sum wherewith he is charged. "And if any one shall refuse or neglect to make payment within thirty days from the date of such demand, it shall be the duty of the said treasurer to levy, or cause to be levied, the said tax and costs attending such levy, by distress and sale of the goods and chattels of the delinquent in such manner as is prescribed by the act entitled to raise and collect county rates and levies passed April 11th 1799; such sum if paid or recovered from a renter to be deducted from his rent."

The judge charged the jury as follows: "I will bring this case down to a very narrow limit. It is somewhat complicated, and involves questions of law too important for me to consider at this time; but there are two questions which I want you to decide. First. Were these assessments made by this association of individuals before or after this tenant went into possession? (and here I may say that there was another case of this kind decided by us a few weeks ago, and although the facts found there have nothing to do with this case, I am bound by the principle of that decision.) If these assessments were made before the tenant went into posses-

[Rutherford v. Maynes.]

sion, then your verdict will be for the plaintiff, for it would be in violation of the ' Bill of Rights' that his property should be taken to pay the debt of another man; but, if on the other hand, you should find that the assessments were made after the tenant went into possession, then you may find for the defendant; provided notice was given as required by this act. And this brings me to the second point, and it is an important question in this case. These acts are highly penal and summary, and must be strictly construed. They require that thirty days' notice shall be given to the owner or possessor, or to his or her agent, authorized to accept service of notice, and if no such notice was given to the owner or to an agent authorized to accept service for him, then you will find for the plaintiff; but if you should find such notice was given, then you will find for the defendant, provided you further find that the assessments were made after the tenant went into possession."

The defendants excepted to the charge, and their bill of exceptions was sealed. The verdict was for the plaintiff, and judgment was entered thereon. The defendants took this writ, assigning for error the charge of the court.

*J. M. Moyer* (with whom was *R. C. Garsed*), for the plaintiffs in error.—The Greenwich Island Meadow Company is a quasi corporation erected for a public object, as well as for private interests. Where any considerable tract of land owned by different persons is in a condition precluding cultivation by reason of moisture and overflow, which embankments and drains would relieve, the public have an interest in the improvement. General taxation is admissible for this purpose, but the legislation which authorizes special assessments on the owners, has been sustained against all objections: Cooley on Taxation 424–427. The legislation in this case constitutes the owners, for the time being, members of the corporation, who elect their own managers for the inspection of the banks, and for levying the necessary assessments. The constitutionality of the Acts of 1760 and 1804, has never been seriously doubted, and the owners of the premises in question have always heretofore recognised the validity of the acts, and enjoyed the benefits. The assessments are not liens upon the land, but a personal charge on the owner or possessor, which may lawfully be collected by distraining goods found on the premises, whether they belong to the owner or tenant in possession. The land could not be sold to pay the tax. The supplementary Act of 1804, is not in violation of the Bill of Rights. It is neither an exercise of the right of eminent domain, nor taxation for private purposes. The legislature may confer upon municipal corporations the right to assess the cost of local improvements, in which the public welfare is interwoven, upon the properties benefited. It is a question of

1 OUTERBRIDGE—6

[Rutherford *v.* Maynes.]

expediency, of which the legislature are tne competent and exclusive judges: Hammett *v.* Philadelphia, 15 P. F. Smith 146; Sharpless *v.* The Mayor, 9 Harris 147; Henry *v.* Horstick, 9 Watts 412; Sharp *v.* Spier, 4 Hill 76; Pray *v.* Northern Liberties, 7 Casey 71; Beekman *v.* Railroad Co., 3 Paige Ch. 73; Hagar *v.* Supervisors of Yolo County, 47 Cal. 222, 223; O'Reiley *v.* Kankakee Valley Draining Co., 32 Ind. 169; Sessions *v.* Crunkilton, 20 Ohio St. 349; Whiting *v.* Lake, 9 W. N. C. 187.

*George W. Thorn,* for defendant in error.—Whatever may have been the condition of Greenwich Island a hundred and twenty years ago, when the Act of 1760 was passed, it does not in its present condition fall within the principle that applies to vast bodies of swamp lands, which in many states are detrimental to the public weal. It is a comparatively small tract, liable to be overflowed by the tides unless protected by banks. Such protection is purely for the benefit of the private owners, and the managers of the meadow company have no legal right to collect from one owner taxes for the general improvement of the whole tract. This authority, even if rightfully conferred by the Act of 1760, is in violation of the Bill of Rights, and repealed by the constitutions of 1790, 1838 and 1874: Rutherford's Case, 22 P. F. Smith 82; Washington Avenue, 19 Id. 352; City *v.* Scott, 31 Id. 80; City *v.* Field, 8 Id. 320; Philadelphia Association *v.* Wood, 3 Wright 73.

But even if constitutional, the acts would not warrant taking the property of a tenant, to pay taxes which had been levied prior to his occupancy. The act by its terms makes the "owner or *possessor*" liable, but the clear intent is, that it shall be the possessor at the time the tax was levied. It is sought in this case to make the present possessor pay the accumulated taxes for years previous to his possession, which the company failed to collect, and from which payment the present occupant derives no benefit.

Mr. Justice TRUNKEY delivered the opinion of the court, January 21st 1881.

Greenwich Island, described in the preamble of the Act of 1760, as marsh, meadow and cripple land, partly drained and partly open to the overflowing of the tide, is the territory required by said act to be embanked and drained for the common benefit of the owners. That it is divided into a number of farms, with several owners; that the lands would be almost, if not altogether unfit for cultivation without embankment and drainage; that the statute provides a just mode for making the general improvements and keeping up the same, and for levying the costs thereof as between the owners, are uncontroverted facts. After the lapse of one hundred and twenty years, during which time the landowners have enjoyed the benefits of the statute, it should not be declared void

[Rutherford v. Maynes.]

but for imperative reasons.   Indeed, the court below held it to be valid, and charged that if the assessments were made after the tenant went into possession, and the requisite notice had been given him, the jury could find for the defendant.    But it was ruled that if the assessments were made before the tenant went into possession, he was not bound to pay them.

When any considerable tract of land, owned by different persons, is in a condition precluding cultivation by reason of moisture and overflow, which embankments and drains would relieve, the public have such an interest in the improvement, and the consequent advancement of the general interest of the locality, as will justify the levy of assessments upon the owners for the purposes of such improvements: Cooley on Taxation 424, and cases cited in note. No doubt general taxation is admissible for this purpose, but the special benefits from enhancements of values must accrue mainly to the owners of the lands, and legislation which imposes the costs upon those who, without the improvements, would be the principal sufferers, is probably in most cases wiser and better: Id. 427. When there is no consideration other than the improvement of land as property, the authority to levy such assessments is confined within limited bounds.   In Pennsylvania, it can scarcely be measured by the necessities or laws of such states as Louisiana or California; there is but little land liable to overflow or swamp-land within her borders.    As the facts are presented, we cannot say that the statute for improvement of Greenwich Island is without those limits of authority.   It widely differs from the Act of May 9th 1871, which was declared unconstitutional in Rutherford's Case, 22 P. F. Smith 82, and has been acquiesced in for several generations.    Every statute which authorizes assessments upon the owners for improvement of their lands, ought to be strictly construed.    If it admit of two constructions, one consistent with the Bill of Rights, the other repugnant, it should receive the former. It is said that the statute makes the owners of this island a *quasi* corporation.    Be it so.    The managers have just the powers, and none other, that are given expressly or by necessary implication. They claim the right to seize the goods of a tenant to satisfy an assessment laid prior to his possession.    They must show the grant or their claim is false.

The Act of 1760 directed the managers to make a true list of the names of the owners or possessors, with the quantity of land held or possessed by each, with the sum per acre of the assessment for the current year; and in default of payment by any such person, judgment could be obtained against him, in satisfaction whereof his land should be levied and let for so long a time as the rents would pay the debts and costs.   By the supplement of 1804, the managers shall ascertain the names of each owner or possessor of every acre of said island, and having estimated the expenses

[Rutherford *v.* Maynes.]

for the year, rate and assess each owner or possessor fairly and equally, his or her proportionate part, and give a list thereof, with their warrant, to the treasurer, who shall demand and receive from every person in such list, his or her legal representatives, the sum wherewith such person is charged. "And if any person shall neglect or refuse to make payment within thirty days from the time of such demand, it shall be the duty of the said treasurer to levy, or cause to be levied, the said tax, and the costs attending such levy, by distress and sale of the goods and chattels, lands and tenements of the said delinquent, in such manner as is prescribed by the act entitled 'An Act to raise and collect county rates and levies,' passed the eleventh day of April, Anno Domini, one thousand seven hundred and ninety-nine;' such sum, if paid or recovered from a renter, to be deducted from his rent." In original and supplement, the assessments are required to be made on the owners or possessors. The possessor may be a renter, and if so, he may defalcate from the rent. Upon default, the property of the said delinquent may be seized. The delinquent is he who was assessed and neglected to pay for thirty days after demand. One whose name is not on the list, and neither owned nor possessed the land when the assessment was made, is not within the terms of the statute. The seizure and sale shall be in the manner prescribed by the Act of 1799, which manner is set forth in the 15th section. "It shall be the duty of the said collectors to levy the said tax by distress and sale of the goods and chattels of said delinquent, giving ten days' public notice of such sale by written or printed advertisement." Nothing else in that act relates to the manner of selling goods and chattels. Section 25 provides that the goods and chattels of tenants occupying lands, shall be as liable to be distrained for taxes, arising out of such lands, as though such tenants were the real owners thereof. This extends the liability to seizure to the property of other people, but does not affect the manner of sale. The treasurer of the managers of the Greenwich Island improvements is not vested with all the powers of tax collectors under the Act of 1879. In case goods of the owner or possessor cannot be found, he is not authorized to take the body of the delinquent to the county jail, as were collectors of county taxes, nor can he take the goods of a tenant who was not in possession when the assessment was laid.

It was said in Henry *v.* Horstick, 9 Watts 412, that the Act of Assembly will admit of a construction, which would authorize a distress of the goods of a party in possession of the land, though the tax was laid prior to his entering into possession; and that the act in this respect being remedial, ought to be construed liberally in order to make the remedy provided by it effectual in all cases. This language was respecting the general laws for collection of taxes, and has no application to the construction of a private statute for local and special assessments.

[Rutherford v. Maynes.]

It is not the intendment of the Greenwich Island Enabling Act, or of its supplement, that the managers may suffer the assessments to remain unpaid for an indefinite time, finally to be collected from a new tenant, or an innocent purchaser. If it were, this case is illustrative of the result. The arrears exceed the value of the annual rent, and the tenant might lose all the excess. Cases would likely arise far worse than this; for here only the amount laid for three years is asked of the tenant. It is no answer to refer to the assessment of public taxes laid by public officers, and the ease of obtaining information in the proper offices in regard to all such taxes. Prompt collection of the assessments from the proper parties is required by the spirit of the act, rather than a loose and unwarranted construction for the enlargement of the powers of the managers.

Judgment affirmed.