# Louderback, Appellant, *v.* Warner.

*Corporations — Meadow companies — Assessments — Membership — Penn's Manor Meadow Company.*

The Penn's Manor Meadow Company, a corporation chartered under the special Act of March 4, 1815, 6 Sm. L. 257, rechartered by the special Act of April 30, 1855, P. L. (1857) 738, and reincorporated under the Act of April 29, 1874, P. L. 73, has no power to levy an assessment upon a person who is not a member of the corporation, and whose land, although a part of the area originally surveyed for protection by the company's works, is not touched by the work for which the assessment was levied.

Every statute which authorizes assessments upon the owners for improvement of their lands, ought to be strictly construed. If it admit of two constructions, one consistent with the bill of rights, the other repugnant, it should receive the former.

Argued Nov. 18, 1907. Appeal, No. 212, Oct. T., 1906, by plaintiffs, from order of C. P. Bucks Co., April T., 1904, No. 24, refusing to take off nonsuit in case of Daniel Louderback et al., Trustees of Penns Meadow Company, v. Geo. Warner. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit to recover assessments by a meadow company.
At the trial the court entered a compulsory nonsuit.

On a rule to take off the nonsuit, STOUT, P. J., filed the following opinion:

By Act of assembly approved March 4, 1815, 6 Sm. L. 257, Robert Crozier and ten others, and their successors, were declared a body corporate under the name of "The Penns Manor Meadow Company," to have the usual and necessary powers of a body corporate for the period of forty years.

The act appointed three commissioners for the time being and provided for the election of three trustees annually thereafter, each to serve one year. It was made the duty of these trustees to have dug a main ditch through the main branches of the marsh or meadow, etc., and to keep the same open, etc., and likewise to keep the bank or sluices at or near the river in good repair; also to keep a regular account of the expenses thereof and to apportion the same amongst the members of the corporation according to the quantity of land held by them, respectively in said meadows. It was also made the duty of each member, his heirs and successors, to pay such trustees his proportion of all the expenses incurred by them for the purposes aforesaid. It also provided for the survey and valuation of the said marsh at the direction of the company.

Upon the organization of the company a survey was made and the meadows was found to contain 120 acres and forty-seven perches, with a total valuation of $15,044.60. Of this

land eight acres and 137 perches was assessed to Robert Crozier at a valuation of $646, being a part of the farm then owned by said Crozier. All assessments have been based on the survey and valuation thus made to this date.

By Act of April 30, 1855, P. L. (1857), 738, the said act of incorporation was revived and extended for a period of twenty years, a number of persons not named in the original charter being thereby declared a part of said company.

Robert Crozier died about 1866 and by proceedings in partition the orphans' court adjudges the said farm, of which the said eight acres and 137 perches of meadow was a part, to his son, William Crozier.

The said William P. Crozier mortgaged said farm and upon a foreclosure of said mortgage the sheriff of Bucks county conveyed the farm to Hector C. Watson, who, April 1, 1887, conveyed the same to George Warner, the defendant.

There is no record evidence to show that any part of said farm was subject to assessments by the Meadow Company.

The said William P. Crozier, during his ownership of said farm, became a member of said company upon the renewal of its charter by the court of common pleas as hereinafter stated, but the said George Warner, the defendant, never became a member of said company, nor did he do any act from which such membership can be inferred. Nor was any of the work, for which the assessments in suit were made, done upon the defendant's property.

The said corporation expired by its own limitation unless it was kept alive by the renewal of the charter by the court of common pleas of Bucks county, under sec. 40 of the corporation act of April 29, 1874, providing for the renewal of charters embraced within sec. 2 of said act whose charters are about to expire by lapse of time from their own limitations. It is contended that the defendant is liable for the assessments in suit because the corporation act of 1874, corporations of second class, XVI, provides for corporations "for maintaining or erecting walls or banks of low-lying lands." This contention cannot be maintained, for two reasons:

1. Because such corporations were not provided for in the

act of April 29, 1874, but by the supplementary Act of April 17, 1876, P. L. 30, which was passed about one year after the date of the decree of said court renewing the charter.

2. Because applications for renewals of charters of the second class must be made to the governor in like manner as an application for an original charter. The court of common pleas has no jurisdiction for the renewal of charters of the second class, and such a renewal would be void and of no effect.

But it was not intended to be renewed as·a corporation of the second class. The court, in its decree of renewal, finds "the same (the certificate) to be in proper form and within the purposes named in the first class of sec. 2 of the act of April 29, 1874." The purpose declared in the certificate is "to promote and encourage agriculture in reclaiming overflowed lands, . . . by erecting and maintaining banks, sluices, creekways and ditches for that purpose." It was clearly the intention of the court and corporators to bring the application within the purposes of the first class, IV, to wit, "the encouragement of agriculture and horticulture." But it is more than doubtful whether these words as used in said act include companies like the Penns Manor Meadow Company, whose primary object is to reclaim overflowed lands by ditching and draining and to collect the costs thereof from the landowners benefited thereby by assessments or taxes.

Assuming that said company as originally created under the act of March 4, 1815, had the power to levy assessments or taxes upon the owners of lands within said marshy district for the purpose of drainage without regard to their membership in said company, and that the corporate life of said company was continued by the renewal of its charter by the court of common pleas, does the said company still retain the right to levy and collect assessments and taxes for such purposes? By sec. 40 of the act of April 2, 1874, under which the proceedings for renewal were had, the said company was required to, and did, in fact, expressly accept the provisions of the constitution of this state and the provisions of said act, and also expressly surrendered all privileges conferred by its original

charter that are not enjoyed by corporations of its class under said act and the general laws of the commonwealth. It no longer owes its existence to and exercises its functions under the act of April 4, 1815, and its supplement of April 30, 1855, but the general corporation act of April 29, 1874. In vain do we look to this act for the right of a corporation formed thereunder to construct and maintain ditches for the purpose of draining marsh lands and to assess and collect the costs thereof from the owners of lands lying within such district who are not members of the corporation. The provision in said act IV, "for the encouragement of agriculture and horticulture," does not confer it expressly or by necessary implication. The legislature no doubt might have conferred such power if it had seen proper to do so. But it did not. Such a power as is here claimed must be clearly conferred. It cannot be implied from the purposes declared in the certificate of incorporation. The court could not continue any powers not conferred by the corporation act of 1874.

Rutherford v. Maynes, 97 Pa. 78, arose out of the collection of assessments made by the Greenwich Meadow Company for drainage purposes. The powers there conferred were clear and specified, and the charter was perpetual. It was there said, "every statute which authorizes assessments upon owners for improvement of their lands ought to be strictly construed. If it admit of two constructions, one consistent with the bill of rights and the other repugnant, it should receive the former. It is said that the state makes the owners of this island a quasi-corporation. Be it so. The managers have just the powers, and none other, that are given expressly or by necessary implication."

In Abbott's Municipal Corporations, vol. 2, P. L. 117, in discussing the legislative authority for the construction of drains for the purpose of reclaiming wet lands it is said: "It may be general or special in its terms and like all other grants of power to public corporations is construed strictly." Again, in speaking of assessments made for such purposes, the same author, on page 1138, says: "The principles controlling and regulating the enforcement and collection of special assess-

ments will also control this particular one. Such provisions are generally strictly construed, operating as the exercise of an arbitrary power directed against private property."

But counsel for plaintiffs claim the right to levy and collect said assessments by virtue of the general laws of the commonwealth, and to support this contention cite the act of April 5, 1870, entitled "An act for the drainage of swampy and wet lands," which provides "that swampy or wet lands, belonging to several owners disjointly, may be drained at the common expense." This is a general law, but the rights thus conferred can be exercised only upon the petition of a majority of the owners of such lands to the court of quarter sessions to do certain things, and when those things have been done the owners of such swamp lands become a corporation for the purposes aforesaid. How the plaintiffs, not having brought themselves under the provisions of this act, can now avail themselves of its benefits in the collections of the assessments in suit, was not shown.

The authorities cited by the plaintiff do not control in the case in hand, because the powers there claimed were clearly conferred and the assessments were made during the life of the original charter.

Other cogent reasons were urged for the refusal to take off the nonsuit, but, having reached the above conclusions, it will not be necessary to discuss them.

Now, April 3, 1906, the motion to take off compulsory nonsuit is refused.

*Error assigned* was refusal to take off nonsuit.

*Herman Yerkes*, of *Yerkes, Ross & Ross*, with him *Harry J. Shoemaker*, for appellant.—Plaintiff's claim arises out of its power to tax and there is no question of a charge running with the land: Wharton v. School Directors, 42 Pa. 358; Com. v. Beamish, 81 Pa. 389; Blake v. People, 109 Ill. 504; Osborn v. People, 103 Ill. 224; Knisely v. Cotterel, 196 Pa. 614; Erie City v. Erie Electric Motor Co., 24 Pa. Superior Ct. 82; Hammett v. Philadelphia, 65 Pa. 146; Rutherford v. Maynes,

97 Pa. 78; Garrett v. Kilpatrick, 13 W. N. C. 384; Robb v. Phila., 25 Pa. Superior Ct. 343; Pittsburg v. Sterrett Sub-District School, 204 Pa. 635.

The recharter is valid and confers the powers of the original corporation: Freeland v. Ins. Co., 94 Pa. 504.

*H. Spalding,* of *Fell & Spalding,* with him *Hugh B. Eastburn,* for appellee, cited: Rutherford v. Maynes, 97 Pa. 78; Tinicum, etc., Meadow Co. v. Farrell, 8 W. N. C. 502.

OPINION BY RICE, P. J., October 12, 1908:

By the Act of March 4, 1815, 6 Sm. L. 257, it was enacted that certain persons, who were named in the act, "and their successors," be a body politic and corporate in law and in fact by the name, style and title of The Penn's Manor Meadow Company. By the express terms of the act it was to continue in force for forty years and no longer, but by the Act of April 30, 1855, P. L. (1857) 738, it was revived and extended for the period of twenty years thereafter, and in addition to the corporators named in the act of 1815 other persons, who were named, "and their successors" were declared to be a part of the incorporated company.

In 1875, certain persons, describing themselves as members of The Penn's Manor Meadow Company, and representing that they were desirous of being rechartered and having said corporation renewed under the provisions of the corporation act of 1874, presented to the president judge of Bucks county their certificate, setting forth, inter alia, the names and residences of the members of the proposed rechartered corporation, and that the purpose for which it was to be carried on was "the same for which the original corporation was formed, viz., to promote and encourage agriculture in reclaiming overflowed lands in Penn's Manor, Falls township, Bucks county, Pennsylvania, by erecting and maintaining banks, sluices, creekways and ditches for that purpose." The judge approved the certificate and decreed that the said The Penn's Manor Meadow Company should be and exist as a new corporation under the provisions of the act of 1874 and of its renewed charter.

The purpose for which the corporation was created in 1815, its original powers in respect of the matters now in question, and the obligations and liability of the members, may be gathered from secs. 2 and 5 of the act. In the former it was provided that "each member of the company, their heirs and successors, shall pay to the trustees, for the time being, his, her or their proportion of all expenses incurred or to be incurred by the trustees hereinafter named, and their successors appointed as hereinafter mentioned, in such manner as the company at their annual meetings shall from time to time direct." And sec. 5 provided that the temporary trustees named in the act, and their successors to be elected by ballot by the members of the company at their annual meetings in January (we quote the language of the section), "shall attend to and have dug a sufficient main ditch through the main branches of the marsh or meadow aforesaid, so as to give all the fall the ground will admit of, and shall keep the same open, and likewise the bank and sluices at or near the river in good repair, and shall keep a regular account of the expenses thereof, which shall be apportioned among the members according to the quantity of land by them respectively held in said meadow, and until it shall be otherwise directed by the company, they shall call on each member to work out his, her or their portion of the expense aforesaid; Provided that the nature of the work and the urgency of the case will admit, and should any member neglect or refuse to make payment, the said trustees shall have power to sue for and recover the same, and all other moneys which shall become due to the company, as other debts of the same amount are recoverable; and cause a survey and valuation of the said marsh to be made when directed so to do by the company."

The marsh or meadow thus referred to is not described in the act, nor are its location, boundaries and extent indicated therein, otherwise than by the title under which the company was incorporated. But it appears by the books of the company that upon its organization the company made, or adopted, a survey and valuation of the meadow, by which it was ascertained that it contained 120 acres and forty-seven perches of

land, which was held by the members in severalty, and that their holdings were of varying values per acre. According to this survey and valuation, which have been made the basis of all subsequent assessments, including those in question, eight acres and 137 perches of the land embraced in the meadow, valued at $646, were owned by Robert Crozier, one of the members of the company named in the act of incorporation. By proceedings in partition after his death his title passed to William P. Crozier, who subsequently joined in the proceeding under which the company was incorporated. Henry C. Watson acquired his title to the farm, of which these eight acres of meadow land form a part, by purchase at sheriff's sale upon a mortgage executed by William P. Crozier in 1868, and in 1887 conveyed the land to George Warner, the defendant.

During the period covered by this action the farm was occupied by W. Y. Warner, the defendant's tenant. The tenant was notified of, attended and participated in meetings of the company, at one time was elected and acted as a trustee, at another time as secretary, and also voted for some of the assessments. In addition to proof of these facts, evidence was given on the trial that the defendant consulted with a trustee about the drainage of the meadow and about opening a ditch through his part of it; that he requested that a meeting of the trustees be called to consider that subject, which he promised to attend, but no meeting was called, and nothing appears to have been done pursuant to his suggestion; that in connection with a settlement of an indebtedness to one of the trustees, incurred by the tenant on behalf of the defendant for building a barn on the latter's premises, the tenant also paid to the trustee an assessment made by the company, which payment upon being informed of it, the defendant expressed satisfaction with; and that a bill for another year's assessment was presented to the defendant, which he promised to send a check for, but did not pay.

This action of assumpsit was brought to recover taxes (so called in the resolutions of the company) imposed by the company in the years 1891, 1892, 1900 and 1902, being in each year

a percentage of the original valuation of the defendant's land embraced in the meadow. These and similar charges upon other individuals were imposed to meet the expenses, principally of constructing, repairing and maintaining an embankment and sluices to protect the meadow against overflow by tide water.

While there is evidence that these works protect and benefit all of the land in the meadow, including that of the defendant, we find no evidence in the record that any of his land abuts directly upon them; indeed, it was admitted by plaintiff's principal witness that none of the work for which the assessments were made was done on the defendant's property.

The contention of the plaintiff, as stated by its counsel, is that The Penn's Manor Meadow Company is a quasi-municipal corporation for the purpose of opening ditches and keeping in repair banks and sluices upon the lands embraced within the control of the corporation, which would greatly improve their value; that the purpose for which it was created was an improvement in which the public have an interest, and which will advance the general welfare of the locality; that the state may choose such agents in its own way to carry out its commands in regard to taxing or police or other general powers; and that by the charter every landowner who became a corporator became a member of the corporation and subjected the lands held by him to a tax, whether in his name or that of his successor in title, who would stand in his place as a member of the corporation. Even if that view of the company's powers be taken, it may well be questioned, whether as against one who never voluntarily became a member of the company, and who did not acquire title to the land in the drainage district until 1887, an apportionment of the expenses incurred in later years according to the varying valuations of the lands made in 1815, is a constitutional mode of taxation according to special benefits conferred, or can be sustained under a power to apportion the expenses among the members according to the quantity of land held by each in severalty. But passing that question, and conceding for present purposes, but without deciding the point, that the rechartered company

has the power of taxation, as above claimed, if the original company had it (a proposition open to very serious question, as shown by the opinion of the learned judge below), it is nevertheless indisputable that it has no power to make the expenses incurred by it a charge upon the lands embraced in the meadow or to impose personal liability therefor upon anyone except members of the company. The language of the act is not open to a construction that would enable the company to assess the defendant and collect the assessment by action unless he was a member of the company. Was he a member?

We have recited the evidence as to his acts and declarations after he became owner of the land, and concur with the learned judge below in the conclusion that they are insufficient to sustain a finding that the defendant ever became a member by his own voluntary action, or that he estopped himself by his acknowledgments or conduct to deny that he was a member. Nor did the acts of the tenant in becoming a member and participating as such in the business of the company, even though these were known to and acquiesced in by the defendant, enlarge the powers of the company so as to enable it to charge the land with a portion of the expenses, or to subject the defendant to a personal liability to which he would not have been subject otherwise.

It follows that in order to maintain this action the plaintiff must establish the proposition that no voluntary action on the defendant's part was necessary to make him a member of the company, that by operation of law he became a member the moment he became the owner of the land within the limits of the meadow, and that by reason of the membership thus enforced upon him he became liable to assessment for the purposes contemplated by the act of 1815. In support of their contention counsel cite the following from Cooley on Taxation, which was quoted with apparent approval in Rutherford v. Maynes, 97 Pa. 78: "When any considerable tract of land owned by different persons is in a condition precluding cultivation by reason of moisture and overflow, which embankments and drains would relieve, the public have such an interest in the improvement, and the consequent advancement of

the general interest of the locality, as will justify the levy of assessments upon the owners for the purposes of such improvements: Cooley on Taxation 424, and cases cited in note. No doubt general taxation is admissible for this purpose, but the special benefits from enhancements of value must accrue mainly to the owners of the lands, and legislation which imposes the costs upon those who, without the improvements, would be the principal sufferers, is probably in most cases wiser and better." But it is to be noticed that in the same connection Justice TRUNKEY said: "When there is no consideration other than the improvement of land as property, the authority to levy such assessments is confined within limited bounds," and further: "Every statute which authorizes assessments upon the owners for improvement of their lands, ought to be strictly construed. If it admit of two constructions, one consistent with the bill of rights the other repugnant, it should receive the former. It is said that the statute makes the owners of this island a quasi corporation. Be it so. The managers have just the powers, and none other, that are given expressly or by necessary implication." The same principle is clearly enunciated in 2 Abbott's Mun. Corp. 1138, from which the learned judge below quotes as follows: "The principles controlling and regulating the enforcement and collection of special assessments will also control this particular one. Such provisions are generally strictly construed, operating as the exercise of an arbitrary power directed against private property." Viewing the case in the light of these principles, we observe that the power to tax every owner of land within this comparatively inconsiderable district is not expressly given; nor is there any express declaration in the act that the original membership of the company was confined to owners of land within the district, nor that future membership should be so restricted, nor that any person who should succeed to the title to land of a member should, nolens volens, succeed to his rights and obligations as a member. Nothing of this kind can be implied from the words of the fifth section, in which the powers of the company are defined. If it is to be implied at all it is from the word "successors" as used in the first and second

sections. But a careful examination of those sections shows that it is not necessary to supply, by construction, the words "in title" after the word "successors" in order to effectuate the obvious purpose of the legislature. The construction of the word, certainly as used in the first section, to mean successors in membership to the corporators specially mentioned is quite as appropriate and reasonable. Construing the act as a whole, there seems to be a necessary implication that a prerequisite of the power to assess a member is his ownership, or at least holding, of land within the district, because as has been seen, the expenses are to be apportioned according to the quantity of land held by the members, but we are not convinced that there is any necessary implication of the power to assess every owner of such land. If the legislature intended to delegate to the company this extreme power, and to make voluntary membership in the company a nonessential to its exercise, it would have been easy to express its grant of power in such manner as to preclude doubt, as was done in the special acts construed in Rutherford v. Maynes, 97 Pa. 78: Robb v. Philadelphia, 25 Pa. Superior Ct. 343; Tinicum & Kingsessing Meadow Co. v. Farrell, 8 W. N. C. 502; Garrett v. Kilpatrick, 13 W. N. C. 384. It need not be declared that it is not within the province of the legislature to thus delegate the power of taxation or to subject an owner of land to the duties and obligations of membership in such corporation without his consent. Nor do we go so far as to say that the proposition of the appellant's counsel as above stated is not an arguable one. But notwithstanding the able argument of appellant's counsel we are unable to say that the power they claim to be vested in the company has been expressly given or arises by necessary implication. If on the other hand we take the fifth section of the act as expressing the extent and limits of the power to assess, and hold, as the words of that section read, that it does not extend beyond the assessment of actual members of the corporation, no absurd result will be reached and some of the objections which were held fatal to the act construed in Rutherford's Case, 72 Pa. 82, will be avoided. See also Philadelphia v. Scott, 81 Pa. 80. We conclude that the learned judge below

was right in holding that the plaintiff was not entitled to recover.

The judgment is affirmed.

HEAD, J., dissents.