(January 26, 1905.)

## ERCANBRACK v. FARIS.

[79 Pac. 817.]

CONSTRUCTION OF CONTRACT.

1. Where E. & Co. enter into a written contract with C. & Son & Co. to complete a certain grading contract, and it is shown that C. & Son & Co. have partially completed the contract before assignment to E. & Co., and under the terms of the original contract of C. & Son & Co. with another that ten per cent of the contract price shall be retained until the final completion of the works, *held* that the words "hereafter accruing" reserves to C. & Son & Co. the ten per cent earned at the time of the assignment of the contract.

(Syllabus by the court.)

APPEAL from District Court of Ada County. Honorable George H. Stewart, Judge.

Judgment for plaintiff, from which defendants appeal. Reversed.

Ira E. Barber and W. E. Borah, for Appellants, cite no authorities in their brief upon the point decided.

Richards & Haga, for Respondents, cite no authorities not found in the opinion on petition for rehearing.

STOCKSLAGER, C. J.—The plaintiffs (appellants) commenced this action in the district court to recover the sum of $2,925.35, together with interest from March 21, 1903. They allege that they are copartners doing business as C. F. Ercanbrack & Co., and that the defendants, A. W. Faris and F. S. Kesl, are copartners doing business as Faris & Kesl. Then follows an allegation that on or about the fifteenth day of April, 1902, defendants entered into a certain contract with D. W. Catts, H. R. Catts and G. H. Harvey, doing business as D. W. Catts & Son. A copy of this contract is made a part of the complaint and marked exhibit "A."

The fourth allegation is that on the twenty-eighth day of July, 1902, plaintiffs entered into a contract with defendants and said D. W. Catts & Son. A copy of this contract is also made a part of the complaint, marked exhibit "B." Then follows an allegation that by and with the consent of defendants, on the eighth day of October, 1902, plaintiff and said D. W. Catts & Son, G. H. Harvey and G. P. Bowman, under the firm name of D. W. Catts & Son & Co., entered into a certain written contract, a copy of which is made a part of the complaint, marked exhibit "C."

The fifth allegation is that on or about the twenty-first day of March, 1903, there was a general balance of $1,126.60 due and owing from defendants to plaintiffs on account of supplies furnished and money advanced under the terms of said contracts, marked exhibits "A" and "B."

For a second cause of action plaintiffs allege that pursuant to the terms of the contract marked plaintiffs' exhibit "C,"

said plaintiffs performed all the remaining works to be performed by said D. W. Catts & Son under the terms of the contract marked exhibit "A," and so completed the same on the twentieth day of January, 1903, and received from defendants final estimate of such work. That by reason of such work so performed by plaintiffs and numerous partial payments made by defendants therefor as said work progressed, there was on the twenty-first day of March, 1903, a general balance of $1,795.75 due and owing from said defendants to plaintiffs. Then follows demand for judgment for the sum of $2,925.35, with interest from March 21, 1903.

Defendants answering the first cause of action in the complaint deny all the allegations as to the indebtedness as therein stated. Answering the second cause of action defendants admit all the allegations of the complaint excepting as to amount of indebtedness due from defendants to plaintiffs, which they say is $903.61, and which amount they offered in writing the day and time it became due upon plaintiffs giving a written release and discharge from all liabilities growing out of said grading contract.

From the brief of appellants we gather the facts in this case to be as follows: Defendants had a contract to perform certain works upon what is known as the Leamington cut-off for the Oregon Short Line Railway Company; that defendants, as such contractors, entered into a contract with D. W. Catts, H. R. Catts and G. H. Harvey to do a certain portion of the work. Thereafter said subcontractors, Catts & Co., entered into an agreement with plaintiffs to the effect that Faris & Kesl was to pay plaintiffs the amount of time checks issued by Catts & Co. during the month of June, 1902, amounting to $896.30, and that Ercanbrack & Co., in consideration thereof, was to furnish Catts & Co. the necessary groceries and provisions to carry on the work and to take care of the pay-rolls of Catts & Co. In this contract Faris & Kesl joined. This is the contract on which plaintiffs base their first cause of action. Thereafter, and on the eighth day of October, 1902, the plaintiffs entered into a contract with Catts & Co. to the effect that the plaintiffs herein purchased the entire outfit of Catts & Co. and

agreed in said contract to complete the contract of Catts & Co., and were to have all compensation thereafter accruing under said contract of Catts & Co. with Faris & Kesl. This contract is plaintiffs' exhibit "C." We will quote enough of this contract to show the relative claims of the parties under it. It says:

"Whereas second parties became and are justly indebted and owing to first parties in the sum of $9,367.40, and whereas at hand for said sum the second parties have this day sold and delivered to first parties certain chattels and property consisting of a camping and grading outfit with tents and stores at work upon the Oregon Short Line Railway, near said Silver City, more particularly described in a certain bill of sale of even date herewith by said second parties and made, executed and delivered to first parties, and, whereas, said second parties have partially completed a contract for grading a certain portion of the roadbed of said railway under the direction of Faris & Kesl.

"Now, therefore, these presents are to witness that first parties shall, with said property, complete and finish said grading contract according to the terms thereof and shall collect from said Faris & Kesl all compensation therefor hereafter accruing, and shall apply said compensation so collected as follows."

The difficulty seems to be to ascertain the true meaning of the words "hereafter accruing" as used in the contract. Ordinarily, it seems to me that the word "hereafter" has a distinct meaning in our language and pertains to something that will occur in the future. "Accrue," as defined by Webster, is "Something that accrues to or follows the property of another." He defines "hereafter" as "A future existence or state; in time to come or some future time or state." It seems to me under the conditions existing in this case and the reasons for the contract—exhibit "C"—there should not be much difficulty in ascertaining what the words "hereafter accruing" were intended to convey. D. W. Catts & Son & Co. disposed of their grading outfit to the plaintiffs in this action, plaintiffs agreeing to complete the work then in progress under a contract between D. W. Catts & Son & Co. with defendants Faris & Kesl. Under all the

contracts only ninety per cent of the contract price was to be paid, ten per cent being retained until the work should be finally completed and accepted by the designated officer of the railway company. It is stated in exhibit "C" that said parties— meaning D. W. Catts & Son & Co.—have partially completed a contract for grading a certain portion of the roadbed of said railway. Then follows the obligation of the plaintiffs in this action, to wit: "Respondents have to complete and finish said grading contract according to the terms thereof, and shall collect from said Faris & Kesl *all compensation therefor hereafter accruing,*" etc. If D. W. Catts & Son & Co. intended appellants to convey to respondents the ten per cent theretofore earned and retained by the original contract, exhibit "A," where was the necessity for the words in the contract, exhibit "C," "hereafter accruing"? If it was the intention that this ten per cent was to go with the contract, the natural and reasonable language of the contract would have been, "All compensation earned or accruing under the contract." As we construe the words "hereafter accruing," they were inserted in the contract for the express purpose of retaining for D. W. Catts & Son & Co. the money theretofore earned, the plaintiffs only to have such benefits of the assigned contract as they earned from the time they assumed control of the works.

The word "therefor" as used in this contract, we think, serves to explain the intention of the parties to it. Webster defines the meaning of this word to be "for that, or this, or it." As used in the contract, we construe it to refer only to work to be performed by the respondents under the contract, and has no application to work already performed by appellants under the contract.

It is conceded that the only question before us for determination is the construction of the contract, exhibit "C." For this reason we do not pass upon the other assignments of error. The judgment is reversed with costs to appellants.

Ailshie, J., and Sullivan, J., concur.

ON PETITION FOR REHEARING.

(March 9, 1905.)

AILSHIE, J.—The respondents have filed their petition for a rehearing in this case, in which they urgently insist that the court has not given that clause of the contract discussed in the original opinion a proper interpretation and construction. The question most seriously urged is that the meaning given to the words "hereafter accruing" is not approved by the leading and recognized lexicographers, nor has it received judicial sanction where the same has come under the consideration of the courts. The sentence which has caused so much discussion and controversy in this case is quoted in the original opinion, and is as follows: "Now, therefore, these presents are to witness that first parties shall, with said property, complete and finish said grading contract according to the terms thereof and shall collect from said Faris & Kesl all compensation therefor hereafter accruing, and shall apply said compensation so collected as follows."

We shall analyze this sentence briefly for the purpose of ascertaining, if possible, the literal meaning thereof within the usually accepted definitions of the language employed. "Therefor," as used immediately following the word "compensation," evidently refers back to the expression, "complete and finish said grading contract," and must necessarily mean that Ercanbrack & Company shall have all compensation for "completing and finishing said grading contract." The word "hereafter" means, "after this time; in future time." The word "accrue," when used as a verb, is defined by the 1904 edition of Webster's International Dictionary as meaning, "to increase; to augment." The Century Dictionary defines it, "to grow; increase; augment." Soule, in the 1902 edition of his Dictionary of English Synonyms, gives the word "accrue," when used as a verb, as synonymous with "result, proceed, come, arise, issue, follow, flow, ensue, be added, be derived, be gained, be got, come in, accumulate." Black, in his Law Dictionary, defines the word "accruing" as meaning, "Inchoate, in process of maturing. That which will or may at a future time, ripen into a vested right, an available demand, or an existing cause of action." In 1

Cyclopedia, 503, "accrue" is defined as meaning, "To arise; to grow to or to be added to; to occur." See, also, 1 American and English Encyclopedia of Law, 479; 1 Words and Phrases Judicially Defined, 101.

It will be seen from the foregoing definitions that the current and accepted meaning of the word "accruing" would be "resulting, arising, or augmenting." While the word when used in the participial form—"accruing"—means something taking place in the present and at the very time the word is used, in this instance the contracting parties limited its operation, upon this contract, in modifying it by the word "hereafter," an adverb of time, thereby restricting the compensation to be collected to that alone "accruing" *after* the execution of the contract. Therefore, the "accruing compensation" which respondents might recover under this contract is that only which began "resulting or arising" after the execution of the contract.

The ten per cent which was withheld from time to time on the contract was constantly *accumulating,* and at the end of each month after the estimates were made by the engineer, that amount had been earned as fully and completely as had the ninety per cent which was payable, but was retained as a security for the completion of the contract. It is fair under the definition of this word to say that this ten per cent which was being retained was a constantly "accruing" indebtedness, which would finally "accrue" upon the completion of the contract. Yet, as before stated, Ercanbrack & Company's right of recovery of such compensation was limited to that "accruing" in the future and impliedly denied to that which had been "accruing" up to the date of the contract.

A somewhat similar judicial view has been taken of this word in the following authorities: *Gross v. Partenheimer,* 159 Pa. St. 556, 28 Atl. 370; *Emerson v. Steamboat Shawans City,* 10 Wis. 433; *Strasser v. Staats,* 35 N. Y. St. Rep. 789, 13 N. Y. Supp. 167; *Richards v. Bellingham Bay Land Co.,* 54 Fed. 209, 4 C. C. A. 290.

Respondents in their petition for rehearing complain of the failure on the part of the court to consider their objection to the right of appellants to defend in this action on the grounds

that appellants do not claim the money sued for themselves, but allege that it is owing to D. W. Catts & Sons & Co., or their assigns.    There is no merit in this contention, for the reason that it was incumbent upon the plaintiffs to recover upon the strength of their own cause of action, and unless they are able to show that the defendants are indebted to them they cannot recover, and it makes no difference how much the appellants may be indebted to other persons for this service.

Petitioners also call our attention to the fact that they should not be held for the entire costs, since they were entitled to recover some judgment in the lower court upon any theory of the case.    This appears to be true, but it did not lessen the necessity for the defendants appealing in order to correct the error committed against them by the trial court in instructing the jury that the plaintiffs were entitled to recover the ten per cent retained as well for the work done by D. W. Catts & Sons & Co., as by the appellants.    The question raised by respondents as to costs might, and probably will, appeal to the trial judge upon a further hearing in this case in taxing costs, but here we only award the cost of the appeal, and with the costs of the lower court we have nothing to do on this appeal.

For the foregoing reasons the petition will be denied.

Stockslager, C. J., and Sullivan, J., concur.