## Henry v. Pechin, Sheriff

*A. Sidney Johnson,* of *Greer & Johnson,* for petitioner.
*William K. Rhodes* and *Frank B. Rhodes,* for sheriff.

BROOMALL, J., March 4, 1938.—This petition to the above court is directed to the refusal of the sheriff to issue to petitioner a license to carry a firearm under section 12 of the Uniform Firearms Act of June 11, 1931, P. L. 497, 18 PS §1585(*a*), etc. The sheriff filed an answer admitting all of the facts averred, including the one which raises the issue here, namely, the refusal of petitioner to restrict his application to a license to carry one specified firearm, with a demand that one license issue to carry three separate firearms. The proceedings appear to be regular and properly before the court. The argument was held before the court in banc upon the petition and answer.

While counsel for the sheriff did not submit briefs or take part in the argument, it appears by the answer that the action of the sheriff in refusing the application is based upon a letter from a Deputy Secretary of the Commonwealth under date of November 17, 1936, stating, inter alia: "We have come to the conclusion that the object of the Uniform Firearms Act is to trace every firearm, and it is our opinion that each individual firearm should be covered with a permit." This is the only reason assigned for the refusal.

The Commonwealth of Pennsylvania in 1931 was the first State to adopt the Uniform Firearms Act as approved in 1930 by the National Conference of Commissioners on Uniform State Laws. Three other States adopted it in 1935. The Pennsylvania act as enacted is substantially as recommended by the commissioners. So far as we have been able to ascertain, the question raised here has not been before the courts of Pennsylvania or elsewhere.

The Pennsylvania act is to regulate and license the sale, transfer, and possession of certain firearms, prescribing penalties, etc. Firearm is defined to be any pistol or revolver with a barrel less than 12 inches, any shotgun with a barrel less than 24 inches, and any rifle with a barrel less than 15 inches. The fee for a license to carry a firearm is 50 cents and the fee for a license to engage in the business of selling firearms is $10. It is a police measure to remedy a real mischief by preventing the promiscuous carrying of deadly weapons concealed upon the person or in a vehicle. Under the ruling in Commonwealth v. McDermott, 94 Pa. Superior Ct. 470, 474, involving an application for a certificate of registration authorizing the collection of funds for charitable purposes (Act of May 13, 1925, P. L. 644), it meets all the requirements of the Constitution.

An analysis of the pertinent portions of the act is necessary in order to reach a conclusion on the question involved. The subject as stated is the regulation and licensing of the sale, transfer, and possession of firearms. Person is defined to include any firm, partnership, association, or corporation.

Section 2 provides that any person who commits or attempts to commit a crime of violence when armed with a firearm contrary to its provisions shall in addition be guilty of a separate offense.

Section 3 provides that violation of it is evidence of intention to commit a crime of violence when it appears

as a fact that the person "was armed with a firearm . . . and had no license to carry same".

Section 4 provides that no person convicted of a crime of violence shall own a firearm or have one in his possession or control.

Section 5 provides that:

"No person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, *without a license therefor* as hereinafter provided." (Italics supplied.)

Section 7 provides for the issuing of a license to any person upon application to carry a firearm in a vehicle or concealed on or about his person ". . . in form to be prescribed by the Secretary of the Commonwealth, and shall bear the name, address, description, and signature of the licensee, and the reason given for desiring a license."

Section 9 imposes duties on the purchaser and seller of any firearm, other than wholesale, and contains the first provision requiring a description of the firearm, namely, that the purchaser shall sign a statement containing, inter alia ". . . the caliber, length of barrel, make, model, and manufacturer's number of the firearm to be purchased".

Sections 10 and 11 provide for the licensing of retail dealers in firearms and the keeping of a true record in triplicate in a book, with a description of the firearms in the same language as in section 9.

Section 12 provides that:

"Any applicant aggrieved by the refusal of his application for a license to carry a firearm . . . may file, within thirty days thereafter . . . a petition . . . praying for a reversal thereof."

We were inclined to the opinion upon the argument that a separate license should issue to cover each firearm. However, upon further consideration of the provisions mentioned, we have reached the conclusion the license should issue to carry a firearm without any designa-

tion thereon of the particular firearm to be carried. To hold otherwise would be contrary to section 7, which provides that: "The license shall be in triplicate, in form to be prescribed by the Secretary of the Commonwealth, and shall bear the name, address, description, and signature of the licensee, and the reason given for desiring a license."

The word "form" means simply, as defined by Webster, "The shape and substance of anything as distinguished from the material of which it is composed; particular disposition or arrangement of matter, giving it individuality or distinctive character; configuration; figure." The apparent purpose and object in delegating to the secretary authority to prescribe the form is that the licenses when issued will be uniform throughout the Commonwealth in size, color, and arrangement of the contents as designated by the legislature.

In O'Neil et al. v. American Fire Ins. Co., 166 Pa. 72, under the Act of April 16, 1891, P. L. 22, a delegation of legislative power to the Insurance Commissioner to prescribe a standard policy of insurance and forbidding the use of any other was held unconstitutional, although the legislature could itself have prescribed the form. In Davidowitz et al. v. Philadelphia County et al., 324 Pa. 17, construing the Voting Machine Act of April 18, 1929, P. L. 549, the authority granted was as follows: "The form and arrangement of ballot-labels, to be used at any election, shall be determined by the Secretary of the Commonwealth, *as nearly as may be in accordance with the provisions of the laws prescribing the form and arrangement of ballots at such election*", and was held mandatory. The court in the last cited case said (p. 27): "Where the legislature has regulated the form of a ballot, it does not lie within the power of any officer to change that form"; and (p. 26): "The secretary is not permitted to substitute his discretion in this regard for that which the legislature has there definitely commanded. To say that the legislature by this section intended to

vest in the Secretary of the Commonwealth an uncontrolled regulation of the arrangement of the ballot labels would cause the act to run afoul of the principle which forbids delegation of legislative power", citing O'Neil v. American Fire Ins. Co., supra.

On further analysis of the act under the above decisions we find that it limits the contents of the license to the name, address, description, and signature of the licensee and the reason given for desiring a license. It does not authorize or direct that a description of the firearm be included, only a description of the person to whom the license is issued.

Where a description of the firearm is required, as under section 9, providing what shall be done when a purchase is made of a firearm, the data to be set forth is for a particular firearm. The provision for the issuing of licenses to sell firearms under section 11, where the form of the license is to be prescribed by the secretary, subject to the provisions of section 9, requires that a triplicate record be kept in a book the form of which may be prescribed by the secretary, and also requires data for a particular firearm. The insertion of data for a particular firearm in these sections without a provision for such data in the license clearly shows a legislative intent that the license should not be issued for a particular firearm.

The amending Act of June 20, 1935, P. L. 350, provides that persons licensed to hunt and fish or persons training dogs may be exempt from its general provisions upon payment of a fee of 15 cents, but before the exemption may be granted "such person shall . . . register with the county treasurer the make of the firearm he desires to carry, and the calibre and number thereof, on a blank to be furnished by the Secretary of the Commonwealth." This is a registration, not a license, and the legislature requires a description of a particular firearm.

With reference to the construction to be placed upon section 5, we adopt the language of counsel for petitioner

and the authority cited in his supplemental brief, as follows:

"At the argument, your honorable court referred to the fact that section 5 provides that 'no person shall carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business, without a license therefor as hereinafter provided'. It was suggested that the word 'therefor' means 'for it' and could therefore only refer back in the sentence to the firearm. Webster's definition of the word 'therefor' is 'for that, or this; for it'. It is accordingly submitted that the use of the word 'therefor' in this section is at least ambiguous. The word could refer to the firearm in the meaning 'for it', but it can just as well refer to carrying firearms in a vehicle or concealed on or about the person, in the meaning 'for that, or this'.

"In the case of Ercanbrack et al. v. Faris et al., 10 Idaho 584, 79 Pac. 817, 818, a contract provided, inter alia, that 'fire parties shall, with said property complete and finish said grading contract according to the terms thereof and shall collect from said Faris & Kesl all compensation *therefor* hereinafter accruing'. It was pointed out that Webster's definition of the meaning of this word was 'for that, or this, or it', and it was decided that 'therefor' as used immediately following the word compensation evidently refers back to the expression 'complete and finish said grading contract'."

The conclusion seems irresistible, because of the provisions in the act requiring a description of the firearm under certain conditions without such a provision for a description in the license, that the legislature did not intend that the license issue for a particular firearm. Because of the many exceptions allowed, including those in a home or place of business without a provision for registration, it is futile to say that the purpose is to keep track of all firearms. It clearly provides where there is a sale that a record shall be kept, naming the purchaser and a description of the particular firearm sold, so that owner-

ship may be established. If a person is arrested while carrying a firearm or one is found, the records provided for will establish ownership. This may be followed by an investigation, if found in the hands of a third person, to ascertain whether it was properly acquired from a seller under section 9, or a licensed dealer under section 11.

We think that a person applying for a license to carry a firearm for his own protection should have designated thereon a description of each firearm he possesses for the purpose of establishing ownership. This, however, is not a requirement of the act as we construe it. We cannot read such a provision into it. The secretary under the act has delegated to him by the legislature authority to require certain specific data on the license and he may not legally add something else. The legislature must make the change if it is desirable.

And now, to wit, March 4, 1938, the petition of Leslie R. Henry is allowed and the refusal of his application to carry a firearm by Nathan P. Pechin, Sheriff of the County of Delaware, is reversed, in accordance with the terms of the act.