# Commonwealth of Pennsylvania *v.* Grossman, Appellant.

*Constitutional law—Constitution of Pennsylvania, Art. 3, Sec. 7—Banks and banking—Act of June 19, 1911, P. L. 1060—Reasonable classification.*

1. Classification is a legislative question with which the courts will not interfere, if made in good faith and based on genuine and substantial distinctions of the subjects classified.

2. In construing a statute the presumption is that it is a valid exercise of legislative power, and the burden is upon him who attacks it to show beyond all doubt that it offends some clearly expressed or necessarily implied prohibition of the Constitution.

3. The Act of June 19, 1911, P. L. 1060, providing for the licensing and regulating of private banking is not a special law. The exemption from the operation of the act of bankers who have done business continuously for seven years in the same locality prior to the approval of the act, and who are not engaged in the sale of railroad or steamship tickets is a reasonable classification based on a real and substantial distinction between two classes of private bankers and does not render the act obnoxious to section 7 of Article 3 of the Constitution of Pennsylvania.

Submitted Oct. 20, 1914.   Appeal, No. 114, Oct. T., 1914, from order of C. P. Allegheny Co., Oct. T., 1913, D. S. B., No. 788, discharging rule to strike off judgment in case of Commonwealth of Pennsylvania v. Isadore S. Grossman and Joseph H. Reich.   Before Fell, C. J., Brown, Mestrezat, Stewart and Moschzisker, JJ. Affirmed.

Rule to strike off judgment entered on bond given in pursuance of Act of June 19, 1911, P. L. 1060.   Before Shafer, J.

The facts appear by the opinion of the Supreme Court.

The lower court discharged the rule to strike off the judgment.   Defendants appealed.

*Error assigned,* among others, was in discharging the rule to strike off judgment.

*Charles H. Sachs,* submitted paper book for appellants.

*Blakeley & Calvert, J. E. B. Cunningham,* First Deputy Attorney General, and *John C. Bell,* Attorney General, submitted paper book for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 11, 1915:

Lewis Amshel, doing business as Victor Banking Company, with Grossman and Reich, the appellants, as sureties, gave a bond to the Commonwealth with warrant of attorney to confess judgment in the sum of $15,000, conditioned that if a license was granted Amshel by the proper State authorities to engage in the business of receiving deposits of money for safe keeping or for the purpose of transmission to another, or for any other purpose, he would faithfully hold, repay and transmit all money deposited with him, "and in the event of the insolvency or bankruptcy of the applicant, upon the payment of the full amount recoverable under the conditions of this bond to the assignee, receiver or trustee of the applicant, as the case may require, for the benefit of the persons making such deposits and all such persons as shall deliver money to the applicant for transmission to another." The bond was approved, the license was issued and Amshel carried on business thereunder until September 22, 1913, when he became insolvent and a receiver was appointed. Judgment was entered on the bond on September 20, 1913.

The sureties on the bond presented their petition to the court below on October 14, 1913, and obtained a rule on the Commonwealth to show cause why the judgment should not be stricken from the record. The bond was given and the license was granted pursuant to the pro-

visions of the Act of June 19, 1911, P. L. 1060, entitled "An act to provide for licensing and regulating private banking in the Commonwealth of Pennsylvania and providing penalties for the violation thereof," and the petitioners averred as the ground for the relief asked that the act is special legislation and, therefore, unconstitutional because there are exempted from its provisions requiring the obtaining of a license, state banks, national banks, hotel keepers, express companies, bankers who file bonds of $100,000, brokers, and especially persons, firms, partnerships and incorporated associations engaged in private banking who have been continuously in the same business in the same locality for seven years prior to the passage of the act, and are not engaged in the sale, as agent or otherwise, of railroad or steamship tickets. The Commonwealth filed an answer to the amended petition in which it denied that the act was unconstitutional and that the bond and judgment were void. The learned court below discharged the rule, and the sureties have taken this appeal.

The evil intended to be remedied by the act is apparent and was well understood by the legislature. As suggested by counsel for the appellee, there had grown up within recent years in the State, and especially in the cities and large manufacturing, coal and coke producing districts, numerous private banks operated by irresponsible parties, usually of foreign nationality, who by reason of speaking their language were naturally entrusted by the foreign population with their funds, both for safe keeping and for transmission to their friends abroad. Very large sums of money were deposited in these private banks by such parties. These bankers invariably engaged in the business of selling railroad and steamship tickets. Their customers, were, of course, principally foreigners who with very few exceptions purchased their transportation from the bankers. During a protracted suspension of work, and while the plants are idle, especially in the coal and coke districts, the foreign labor

in great numbers visit their old homes, and remain until
work is resumed. This could be done at less expense,
owing to cheap steamship rates, than if they remained
here unemployed. The traffic in railroad and steamship
tickets, therefore, was a source of large revenue to these
bankers without requiring very little, if any, additional
expense to carry on the business. It was well known
in the labor districts where these private banks were es-
tablished that frequently the owners of the banks would
embezzle or misappropriate funds deposited with them
or abscond with the funds, often returning to their native
country. This was the situation which confronted the
legislature in 1911 when it passed the act under con-
sideration. There can be no doubt that there was a
necessity for legislation to protect parties dealing with
this class of private bankers, and the question is whether
the legislature in the Act of 1911, passed to remedy the
mischief, violated the constitutional provision prohibit-
ing special or local legislation.

The single question therefore, is whether the excep-
tions made in section 8 of the act and the classification
thereby established, are prohibited by the Constitution.
The contention of the learned counsel for the appellant,
relied on in his argument to sustain the appeal, is that
the exemption of bankers who have done business con-
tinuously for seven years in the same locality prior to the
approval of the act, and who are not engaged in the sale
of railroad or steamship tickets is a classification not
permitted by the Constitution and invalidates the act.
This contention we do not think can be sustained. In
construing a statute the presumption is that it is a
valid exercise of legislative power, and the burden is
upon him who attacks it to show beyond all doubt that
it offends some clearly expressed or necessarily implied
prohibition of the Constitution. To doubt is to be re-
solved in favor of the validity of the legislation. There
must be no conflict between the legislative and judicial
departments of the government if it can be avoided, and

while it is unquestionably the duty of the courts to de-
clare invalid legislation violating the fundamental law,
yet this will not be done, as is well settled, unless there
is a clear violation of the Constitution, a clear usurpation
of a power prohibited. The legislature is the sole judge
of the wisdom and expediency of a statute, as well as of
the necessity for its enactment, and whether the legis-
lation be wise, expedient or necessary is without im-
portance to the court in determining its constitutional-
ity. In other words, the assembly has a free hand to
legislate on every subject in such manner as it deems
proper unless there is a constitutional prohibition clear-
ly expressed or necessarily implied.

The contention of the appellant is that the Act of
1911 is class legislation, prohibited by section 7 of Ar-
ticle 3 of the Constitution, and is not a classification of
private bankers which could be constitutionally made
by the legislature. We have sustained classification as
the proper exercise of legislative power, and held that it
is a legislative question with which the courts will not
interfere, if made in good faith and based on genuine
and substantial distinctions of the subjects classified.
What business or occupation so far affects the public
welfare and good order as to require to be licensed is a
matter of legislative consideration and control which
when exercised in good faith is outside of the juris-
diction of the courts: Oil City v. Oil City Trust Co.,
151 Pa. 454. In Seabolt v. Commissioners of Northum-
berland County, 187 Pa. 318, we said in reversing the
court below and sustaining such legislation (p. 323):
"Legislation for a class distinguished from a general
subject is not special but general, and classification is
a legislative question, subject to judicial revision only
so far as to see that it is founded on real distinctions
in the subjects classified, and not on artificial or irrele-
vant ones used for the purpose of evading the constitu-
tional prohibition. If the distinctions are genuine the
courts cannot declare the classification void, though

they may not consider it to be on a sound basis. The test is, not wisdom, but good faith in the classification."

The act under consideration is the exercise by the legislature of the police power of the State which, as said by Chief Justice TANEY in License Cases, 46 U. S. 504, is nothing more or less than the powers of government inherent in every sovereignty, that is to say, the power to govern men and things. That the legislature has authority to regulate private banking when carried on alone, or in connection with other business, must be conceded. That question is not raised here. The State may interfere wherever the public interests demand it, and in this respect a large discretion is necessarily vested in the legislature to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests: Lawton v. Steele, 152 U. S. 133. Considering the manifest purpose of, and the necessity for the legislation, we think the classification made in the Act of 1911 is founded on a real and substantial distinction between two classes of private bankers. We have pointed out above the conditions in the State which necessitated such legislation for protection against a certain class of dishonest and irresponsible parties engaged in private banking. They not only receive and transmit deposits of money, but also engage in the sale of railroad and steamship tickets. They are in a class by themselves, and the legislature recognized the necessity of protecting the public against their dishonest practices. The law does not prohibit any one from engaging in the business of receiving deposits and transmitting them, and selling railroad and steamship tickets in connection therewith, but regulates the business by requiring a bond to protect those dealing with such bankers. It is a statute enacted under the police power to protect the public who deal with such bankers against imposition, dishonesty and fraud, for which, otherwise, they would have no sufficient relief. The classification was made

by the act to the end that the remedy may be applied to
the particular act or condition intended to be prohibited
or regulated: Commonwealth v. Young, 57 Pa. Supe-
rior Ct. 521, 524. We may readily assume, as said by
the court in Musco v. United Surety Co., 196 N. Y. 459,
in passing on the validity of a similar statute, that the
legislature had knowledge that there had been a special
disposition on the part of ignorant aliens to deposit for
transmission abroad money with irresponsible persons
who carried on the business of selling steamship tickets;
that the latter class of business naturally attracted the
former branch, which resulted in widespread frauds
upon and losses by the ignorant depositors; and, there-
fore, the legislature was justified in selecting for regu-
lation the class of persons whom it did select. In the
New York case, the appellate division of the Supreme
Court, whose judgment was affirmed, said, inter alia:
"The legislature could well take notice of the frequent
embezzlements and misappropriations by transatlantic
ticket agents of funds entrusted to them for transmis-
sion by their fellow countrymen, and that ignorant emi-
grants were more likely to entrust money for trans-
mission to their home countries to the men who had
charge of the transporting of themselves or their friends
than through regular banking institutions."

Considering the manifest purpose of the act to protect
against dishonesty and imposition by a class of private
bankers, there was sufficient reason for exempting from
its provisions those who continuously, and in the same
locality, had conducted the business of private banking
for seven years. The legislature regarded one who en-
gaged in the private banking business for seven years in
the same community, and not acting as a ticket agent,
as trustworthy and not a menace to the community,
and at all events unlikely to practice fraud and decep-
tion on his patrons. He would certainly establish a
reputation which would protect those who might desire
to deal with him, and, therefore, not require the pro-

tection of the act. In view of the doctrine announced in Heath & Milligan Mfg. Co. v. Worst, 207 U. S. 338, that "legislation which regulates business may well make distinctions depend upon the degree of evil," we are not disposed to condemn the act in question by reason of this exemption.

There are many familiar illustrations of similar classifications made by the legislature in the regulation of other kinds of business. We have sustained statutes regulating the traffic in intoxicating liquors, insurance, the operation of anthracite and bituminous coal mines, and numerous other kinds of business. We held to be constitutional the Act of June 2, 1891, P. L. 176, relating to anthracite coal mines, although it was applicable only to such mines as employed over ten men: Durkin v. Kingston Coal Co., 171 Pa. 193, an act prohibiting peddling with the proviso saving to citizens the right to sell their own goods: Commonwealth v. Brinton, 132 Pa. 69, a Poor Law which divided paupers into two classes and established a different rule as to the relief of each class: Pulaski Township Poor District v. Lawrence County, 222 Pa. 358, and an act for the naturalization of adults only: Leinbach's Est., 241 Pa. 32. Such legislation has also received the approval of the Supreme Court of the United States. In Dent v. West Virginia, 129 U. S. 114, the court sustained a statute of that state regulating the practice of medicine which contained an exception in favor of persons who had practiced medicine in the state continuously for the period of ten years prior to a specified date. The Medical Registration Law of Maryland making the practice of medicine without a license a criminal offense was held in Watson v. Maryland, 218 U. S. 173, not to be unconstitutional because its provisions did not apply to those who practiced prior to a specified date and had treated at least twelve persons within a year prior thereto.

We think the Act of June 19, 1911, P. L. 1060, is a valid exercise of the police power of the State, and, therefore, the judgment is affirmed.