## Commonwealth v. Young, Appellant.

*Constitutional law—Special legislation — Unreasonable classification—Money lenders—Act of June 5, 1913, P. L. 429—Constitution of Pennsylvania, Article III, Section 7.*

The Act of June 5, 1913, P. L. 429, providing for the licensing of certain money lenders creates a class of persons indistinguishable from the entire body of citizens by anything suggesting differentiation with respect to rights, privileges, immunities or peculiarities and invests such class with the privilege denied to all persons not within the class of collecting usurious interest on money loaned. There is nothing in the act suggestive of a purpose to promote the good order, peace, health, protection, comfort, convenience or morals of the community. It is a special law and is not a valid exercise of the police power. It is violative of Article III, Section 7, of the Constitution and is void.

Argued Jan. 5, 1915. Appeal, No. 11, Oct. T., 1915, by defendant, from judgment of Superior Court, April T., 1914, No. 93, affirming sentence of Q. S. Allegheny Co., June Sessions, 1913, No. 280, in case of Commonwealth of Pennsylvania v. George F. Young. Before BROWN, C. J., POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Appeal from the Superior Court.

Indictment for loaning money at a rate of interest exceeding six per cent. in violation of the Act of June 5, 1913, P. L. 429, Section 1.

The opinion of the Supreme Court states the facts. See 57 Pa. Superior Ct. 521.

Verdict of guilty. The defendant was sentenced to pay a fine of $100 and costs. The Superior Court affirmed the judgment of the Court of Quarter Sessions. Defendant appealed.

*Error assigned* was the judgment of the Superior Court.

*John C. Bane,* with him *H. J. Nesbit,* of *Prestley & Nesbit,* for appellant.—The Act of June 5, 1913, P. L. 429, is a special law, it is not an exercise of the police power: Sayre Borough v. Phillips, 148 Pa. 482-488; Commonwealth v. Zacharias, 181 Pa. 126; Hill v. Fetherolf, 236 Pa. 70 at 78-79.

*R. M. Gibson,* Assistant District Attorney, with him *R. H. Jackson,* District Attorney, for appellee.—The act was properly passed by the legislature in the exercise of the police power: Com. v. Beatty, 15 Pa. Superior Ct. 5 (15); Com. v. Jones, 4 Pa. Superior Ct. 362 (371); Munn v. Illinois, 94 U. S. 113; Iowa Savings & Loan Association v. Heidt, 107 Ia. 297; Cooley's Prin. Const. Law, 235; Com. v. Pflaum, 50 Pa. Superior Ct., 55, 64; Com. v. Pflaum, 236 Pa. 294; Com. v. Mintz, 19 Pa. Superior Ct. 283; Oil City v. Oil City Trust Co., 151 Pa. 454.

OPINION BY MR. JUSTICE STEWART, March 15, 1915:

The appellant was found guilty under an indictment charging him with having loaned a certain sum of money at a rate of interest exceeding six per cent. without having complied with the provision of Sec. 1 of the Act of

June 5, 1913, P. L. 429; and upon the entry of judgment he was sentenced to pay a fine of $100.00, and costs of prosecution. The appeal challenges the constitutionality of the act, and many points of supposed conflict between the Constitution and the act are suggested for our consideration. One, well sustained, would be quite sufficient for appellant's purpose, and if one such can be found, we may be excused from discussing the others. The act in question is entitled "An Act regulating the making of certain loans, limiting the charges therefor; requiring and regulating the licensing of members, fixing the fee therefor, and prescribing penalties for violation of the act." By Sec. 1 it is provided, "That on and after the passage of this act, it shall be lawful for any person, persons, partnership, association, or corporation within this Commonwealth, who shall comply with the requirements of this act to loan money at interest, and charge and collect for the loan thereof brokerage and examination fee in addition to interest at the rate of six per cent. per annum, under the following conditions." These conditions require that the party desiring to engage in the business of lending money, shall obtain license to conduct such business from the Court of Quarter Sessions of the county in which the business is to be conducted. The qualifications entitling one to a license are few and simple; the applicant must be a citizen of the United States; he shall file with the court a bond in the sum of $5,000.00 conditioned for the faithful observance of the provisions of the act, and for the payment of all fines and penalties which may be imposed on him, and that in point of character he shall stand clear of ever having been convicted in any jurisdiction of certain specified crimes and misdemeanors. Having so qualified, and paid a license fee, he thereupon is licensed for one year to lend money at the place of business for which the license was issued, and to "charge the borrowers thereof, for its use or loan, interest not to exceed the rate of six per cent. per annum, and a brokerage fee

of not more than one-tenth of the amount actually
loaned," and in addition, "an examination fee of not
more than $1.00 on all loans not exceeding fifty dollars
in amount." What we have here recited of the act is
quite sufficient to give a correct understanding of its
main purpose, and enable us to anticipate the certain
effect that must follow its enforcement.

The general scheme of the act is, to create into a class
persons absolutely undistinguishable from the entire
body of citizenship by anything suggesting differenti-
ation with respect to rights, privileges, immunities, or
peculiarities, whether arising out of personal or business
relations, and then to invest such class with a privilege
denied to all not within the class, namely, the right to
collect on money loaned a rate of interest in excess of
that to which all others are confined. So much is beyond
all question. The artifice adopted by which this result,
with respect to the interest charged, may be reached, is
too thin a disguise to conceal from even the most un-
wary the real purpose of the act, and too transparent to
mislead any one into supposing that the charge allowed
by way of brokerage and examination fee is anything
but usurious interest under another name. With the
policy of the act we have no concern; but, in view of
the argument made that it was passed in a proper exer-
cise of the police power of the State, and therefore not
open to condemnation as a special law, a word of com-
ment is necessary. If there be anything in this act even
faintly suggestive of a purpose to promote the good
order, peace, health, protection, comfort, convenience or
morals of the community, we have failed to discover it.
It is little less than mockery to ascribe to the act the
benevolent purpose to afford ampler borrowing facilities
to a class of people who, it is claimed, because of their
limited credit and more moderate demands with re-
spect to loans, when these are required, could not be
sufficiently accommodated under previous existing con-
ditions. Whether such persons stand in need of further

facilities of this character, or whether it is practicable by legislative action to afford the relief needed, are questions wholly aside. This one fact stands out with a distinctiveness that makes it unmistakable and indisputable—the necessary and only effect of this act must be, not to benefit such as are necessitous, but to advantage a class of persons who, however they may have qualified by showing that none in the class have ever been convicted of certain crimes and misdemeanors, are yet willing to pay for the privilege of exacting from those made dependent by their necessities, a rate of interest more than six times the rate borrowers with larger means can be compelled to pay. To say of an act that accomplishes such results that it is exempt from constitutional restrictions with respect to special legislation, because it is an exercise of police power, is to mistake wholly the object of the act, and to strangely misconceive what is meant by the police power of the State.

To return to the provisions of the act—what is this brokerage fee of one-tenth the amount loaned by one of this artificial class of lenders? As ordinarily understood brokerage is compensation paid to an intermediary who brings parties to a bargain. We know of no other meaning given the term. Here the member of this privileged class becomes at once lender and intermediary, by pure fiction, and is allowed a brokerage for no conceivable service rendered or to be rendered. For what service is a borrower to pay an examination fee of one dollar on each loan, whether of five dollars or fifty? Is there anything in the business of this licensed class that requires the making of other and further examination, with respect to the obligations that they accept from a borrower, than is usual and incident when money is loaned by banks or individuals not of this privilege class? Can any reason be suggested why either brokerage or examination fee should be allowed this class of money lenders and denied to others? If computed as additional interest charge—and it is this and nothing else—the result is.

an interest charge of thirty-eight per cent. per annum on a loan of $50.00, counting the necessary renewals, and yet we are asked to believe, and so hold, that this act, though special it be, is saved from that condemnation because passed in the exercise of a power entrusted to the legislature to prescribe regulations for the good order, health, comfort, convenience and morals of the people.

In what we have said our purpose has been simply to show that the one certain effect of the act is to create a distinct class out of persons having in common, as between themselves, no peculiarities whether of person or business, or anything else, distinguishing them from any other class, and investing the class thus artificially created with special and exclusive privilege with respect to interest charges on money loaned. From our study of the act we see no escape from the conclusions above expressed. We, therefore, hold that the act is violative of Sec. 7, of Article III, of the Constitution, in the respects indicated; and it is accordingly ordered that the judgment be reversed, and the appellant be discharged without day.