# Commonwealth v. Puder, Appellant.

*Constitutional law—Special legislation—Classification—Money lenders—Act of June 17, 1915, P. L. 1012.*

The Act of June 17, 1915, P. L. 1012, regulating the business of loaning money in small sums "to individuals pressed by lack of funds to meet immediate necessities," fixing the rate of interest and requiring the licensing of lenders, is not special legislation within the meaning of Art. III, Sec. 7 of the Constitution of Pennsylvania.

The act does not arbitrarily create a class of money lenders, loans and borrowers where no real distinction existed between

them and other lenders, loans and borrowers, but it recognized a class which had created itself and put a reasonable limitation of $300 on the class of transaction in which its members participated.

Classification by a statute with the view of legislating for either class separately, is essentially unconstitutional, unless a necessity therefor exists,—a necessity springing from manifest peculiarities clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class separately, that would be useless and detrimental to the other.

*Constitutional law—Title of act—Regulation of money lending —Act of June 17, 1915, P. L. 1012.*

The Act of June 17, 1915, P. L. 1012, entitled "An Act regulat-. ing the business of loaning money in sums of Three Hundred ($300) Dollars or less, either with or without security, to individuals pressed by lack of funds to meet immediate necessities; fixing the rate of interest and charges therefor; requiring the licensing of lenders, and prescribing penalties for the violation of this Act" does not violate Art. III, Sec. 3, of the Constitution of Pennsylvania, in that its title is insufficient.

The court will not sustain a contention that the act is void because its title does not clearly indicate the fact that an unlicensed person is liable to be punished criminally for any loan to a person whether he is an "individual pressed by lack of funds to meet immediate necessities," or not, where more than the legal rate of interest is charged. The use of the word "penalties" in the title is sufficient notice of the provision of section six of the act, making a violation of the act a misdemeanor.

Argued Nov. 13, 1916. Appeal, No. 328, Oct. T., 1916, by defendant, from judgment of Q. S. Philadelphia Co., Jan. T., 1916, No. 560, on verdict of guilty in case of Commonwealth v. H. Matthias Puder. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Indictment for unlawfully lending money without first having complied with the provisions of Sec. 1 of the Act of June 17, 1915, P. L. 1012.

The case turned upon the constitutionality of the Act of June 17, 1915, P. L. 1012.

Verdict of guilty upon which the defendant was sen-

11, (1917).]     Assignment of Errors—Arguments.

tenced to pay a fine of $100 to the Commonwealth and the costs of the prosecution.

*Error assigned* was in refusing binding instructions for defendant.

*Owen J. Roberts,* with him *Charles H. Weston,* for appellant.—The Small Loans Act is special legislation since its classification does not satisfy the constitutional requirement that it should be based upon the necessities of different classes with manifestly peculiar needs: Wheeler v. Philadelphia, 77 Pa. 338; Scowden's App., 96 Pa. 422; Ayars' App., 122 Pa. 266; Chalmers v. Philadelphia, 250 Pa. 251; Com. v. Casey, 231 Pa. 173; Com. v. Clark, 14 Pa. Superior Ct. 435; Sayre Borough v. Phillips, 148 Pa. 482; Com. v. Zacharias, 181 Pa. 126; Mansfield's Case, 22 Pa. Superior Ct. 224; Com. v. Grossman, 248 Pa. 11.

Even if the act is not special legislation, the indictment will not stand because the penal provision upon which the indictment is based is not clearly expressed in the title of the act: Mt. Joy Borough v. Lancaster, Etc., Turnpike Co., 182 Pa. 581; Hatfield v. Com., 120 Pa. 395.

*Joseph H. Taulane,* Assistant District Attorney, with him *Samuel P. Rotan,* District Attorney, for appellee.—The legislature was justified in placing money lenders who loan sums of $300 or less in a class by themselves: Rast v. Van Deman, 240 U. S. 342; Engel v. O'Malley, 219 U. S. 128; Mut. Loan Co. v. Martell, 222 U. S. 225; Rosenthal v. New York, 226 U. S. 260; Booth v. Indiana, 237 U. S. 391; Quong Win v. Kirkendall, 223 U. S. 59; McLean v. Arkansas, 211 U. S. 539; Wilson v. Edwards, 32 Pa. Superior Ct. 295; Com. v. Mecca Co., 60 Pa. Superior Ct. 314; Com. v. Pflaum, 236 Pa. 294.

The title of the act is not defective: Com. v. McKenty, 52 Pa. Superior Ct. 332.

OPINION BY WILLIAMS, J., July 13, 1917:

In this proceeding the constitutionality of the Act of June 17, 1915, P. L. 1012, is attacked because (1) it is special legislation, (2) the title does not clearly give notice of the penal provisions contained in section 6, and (3) it is a delegation of legislative power to the banking commissioner.

We may eliminate the third contention. As the appellant is not appealing from any act of the banking commissioner, it is not necessary to discuss whether his duties are not of such ministerial character as to be properly authorized by the provisions of the act.

In Com. v. Young, 248 Pa. 458, the Act of June 5, 1913, P. L. 429, was held unconstitutional because it was special legislation purporting to regulate money lending. STEWART, J., said: "Having so qualified, and paid a license fee, he (the money lender) thereupon is licensed for one year to lend money......and to 'charge the borrowers thereof, for its use or loan, interest not to exceed the rate of six per cent. per annum, and a brokerage fee of not more than one-tenth of the amount actually loaned,' and in addition, 'an examination fee of not more than $1.00 on all loans not exceeding fifty dollars in amount.'......The general scheme of the act is, to create into a class persons absolutely undistinguishable from the entire body of citizenship by anything suggesting differentiation with respect to rights, privileges, immunities, or peculiarities, whether arising out of personal or business relations, and then to invest such class with the privilege denied to all not within the class, namely, the right to collect on money loaned a rate of interest in excess of that to which all others are confined.....Can any reason be suggested why either brokerage or examination fee should be allowed this class of money-lenders and denied to others? If computed as additional interest charge—and it is this and nothing else—the result is an interest charge of thirty-eight per cent. per annum on a loan of $50.00, counting the necessary renewals.

......In what we have said our purpose has been simply to show that the one certain effect of the act is to create a distinct class out of persons having in common, as between themselves, no peculiarities whether of person or business, or anything else, distinguishing them from any other class, and investing the class thus artificially created with special and exclusive privilege with respect to interest charges on money loaned."

Following this decision the Act of 1915 was passed by the legislature with the idea of correcting the errors therein pointed out. The issue is now presented. Does this act meet those objections?

A review of the two acts indicates that the substantial differences are as follows: 1. The licensing and supervisory power in the Act of 1913 is given to the Court of Quarter Sessions, in the Act of 1915 to the banking commissioner. 2. The class of loans is confined to those under $300 in the Act of 1915, whereas there was no limit in the Act of 1913. 3. The class of borrowers is clearly defined by the Act of 1915 as "individuals pressed by lack of funds to meet immediate necessities," whereas there was no attempt in the Act of 1913 to define the class to be benefited. 4. The class of lenders is limited in the Act of 1915 to those who make the class of loans above set forth to the individuals in the class described. There is no logical differentiation made by the Act of 1913 between the class of lenders created by it and the vast number of other lenders. 5. The interest charges in both acts are practically the same, though called by different names, and allow a maximum gross return, from the business of handling loans, of about 40 per cent. on the money loaned. The other differences appearing are not material to the constitutionality of the act and need not be discussed.

In determining whether the classification is proper we must be ruled by the language in Ayars' App., 122 Pa. 266, where Sterrett, J., said (281) : "......the underlying principle of all the cases is that classification, with

the view of legislating for either class separately, is essentially unconstitutional, unless a necessity therefor exists,—a necessity springing from manifest peculiarities, clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the others."

In the Act of 1915 the legislature has prescribed the limitations of a class so well recognized in the economic and social life of the United States that twenty-three states have passed legislation on the subject, modifying the application of the usury laws and remedying in a great measure the distress of "individuals pressed by lack of funds to meet immediate necessities." The Act of 1913 failed to prescribe any limitation and created, side by side with other money-lenders, a class of persons with the right to loan money in any amount, and permitted to charge fees, cloaked in language which but barely disguised the fact that the charging of interest in excess of the legal rate was the real purpose of the act. No person in the natural class of society which had created itself was in need of loans of large sums of money nor was there any necessity for permitting the charging of the excessive fees in the case of large loans.

We think the present act has corrected the evil referred to in Com. v. Young, supra. The loans affected are in sums of $300 or less; they are to persons "pressed by lack of funds to meet immediate necessities"; and the brokerage fees, provided in the Act of 1913, are dispensed with except as to $1, which may be charged as an examination fee in the case of loans between $15 and $50, and $2, in cases of loans between $50 and $300. The interest allowed under the act amounts at its maximum to 36 per cent., plus the $1 examination fee in loans ranging from $15 to $50, and plus the $2 examination fee in sums ranging from $50 to $100; and 24 per cent. plus the $2 examination fee in sums ranging from $100 to $300, on loans of four months or over.

We are thus presented with the question whether the limiting of the class of loans and lenders to the $300 or less standard is in answer to a necessity springing from manifest peculiarities demanding imperatively legislation for this class of loans, its lenders and borrowers. Other states have passed such acts, with the same limitations or similar ones, and they have been held to be a valid classification both within the state and federal constitutions: Eaker v. Bryant, 24 Cal. App. 87; State v. Hurlburt, 82 Conn. 232; Griffith v. Conn., 218 U. S. 563; State v. Wickenhoefer, 6 Pennewill's Del. Rep. 120; Reagan v. Dist. of Columbia, 42 Wash. L. Rep. 88; Edwards v. State, 62 Fla. 40; King v. State, 136 Ga. 709; Ex parte Berger, 193 Mo. 16; Dunn v. Hoboken, 85 N. J. L. 79; People v. Young, 207 N. Y. 522; State v. Sherman, 18 Wyo. 169. Missouri it will be noted has a constitutional provision like our own.

The imperative necessity for such classification appears when we consider that these money lenders have for years operated without regulation oppressing those compelled by necessity to promise the payment of interest charges running up to two and three hundred per cent. per annum. This is verified by the results of an investigation made by the Department of Public Safety of Philadelphia, showing that in one hundred loans made by twenty-seven unregulated money-lenders, the interest produced by the loans ran from 97 per cent. to 394 per cent. per annum. As to the borrowers there is no doubt as to the imperative necessity.

As to the lenders we have also a fair classification. The overhead charges and the items of loss inseparable from the lending of money on little or no security is an ample justification for the allowance of the extra interest charged. The examination fee in the majority of cases is well earned by the time spent in investigating the moral and financial responsibility of the applicant.

Com. v. Grossman, 248 Pa. 11, decided that the Act of June 19, 1911, P. L. 1060, providing for the licensing and

regulating of private banking was not special legislation; that the exemption from the operation of the act of bankers who have done business continuously for seven years in the same locality prior to the approval of the act, and who are not engaged in the sale of railroad tickets or steamship tickets is a reasonable classification based on a real and substantial distinction between two classes of private bankers. In that case the principle laid down in Seabolt v. Commissioners of Northumberland County, 187 Pa. 318, 323, that "legislation for a class distinguished from a general subject is not special but general, and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition" was recognized and reaffirmed.

Our office is not to determine the advisability of the classification, but whether the class is differentiated from the rest of those engaged in the same general line of business to a degree that amounts to a real distinction. Under this test the classification in the present act was proper. We are not unmindful of the real crux of this controversy; that judicial approval is asked for the licensing of a class in our society entitling them to prey on the poor and needy to an extent which on its face appears to be unconscionable interest. In answer to any criticism on this point it is well to remember that in most cases the loans are so small and the risk so great that a speculative rate of interest is justified. Furthermore the legislature is not bound to allow only a rate of interest at six per cent., but can fix any rate it desires and it is not within our province to question its wisdom.

The contention that the act is void because its title does not clearly indicate the fact that an unlicensed person is liable to be punished criminally for any loan to a person whether he is an "individual pressed by lack of funds to meet immediate necessities" or not, where more

than the legal rate of interest is charged, cannot be sustained. Section 6 of this act would under no circumstances be construed to mean anything not within the purview of its title if it is possible to bring it within the language there used: Com. v. Butler, 99 Pa. 535. The presumption is that the legislature did not intend to violate the Constitution, and where possible the court will construe it so as to make it constitutional: Craig v. First Presbyterian Church, 88 Pa. 42; Louderback v. Warner, 37 Pa. Superior Ct. 136. It would be perfectly competent for a court to construe the language objected to, namely "Every person......
who shall violate any provision of this act, or shall direct or consent to such violation; or who shall lend money in sums of three hundred ($300) dollars or less, and charge and receive for the use thereof interest in excess of six per centum per annum, without first having complied with the provisions of section one of this act, shall be guilty of a misdemeanor" as meaning loans made by persons engaged in the business of lending to the persons described in the title. Furthermore the court could take judicial notice of the fact that no reasonable person would borrow $300 or less and agree to pay from 24 to 36 per cent. interest unless he came within the class described as "individuals pressed by lack of funds to meet immediate necessities."

We are of opinion that the title "An act regulating the business of loaning money in sums of three hundred ($300) dollars or less, either with or without security to individuals pressed by lack of funds to meet immediate necessities; fixing the rates of interest and charges therefor; requiring the licensing of lenders; and prescribing penalties for the violation of this act" clearly expresses in a manner sufficient to bring to the attention of a casual observer or anyone interested in the legislation, notice of the fact that Section 6 made a violation of the provisions of the act a misdemeanor. The word "penalties" comprehends both civil and criminal punishment.

The cases cited by appellant in which acts were declared unconstitutional because of a lack of manifest peculiarities distinguishing the class created from the rest of those engaged in the same general business, do not rule this case. There is only a relative difference between engineers who operate boilers of more than ten horsepower and those who operate smaller ones (Chalmers v. Philadelphia, 250 Pa. 251) ; a man who shovels clay for a municipality and one who does so for a private contractor (Com. v. Casey, 231 Pa. 170) ; one who labors for a corporation and another who labors for an individual (Com. v. Clark, 14 Pa. Superior Ct. 435) ; peddlers who live within a municipality and those who do not (Sayre Borough v. Phillips, 148 Pa. 482) ; managers of drug stores, whether the person be a man or woman, whether related or not related to the owner of the store (Com. v. Zacharias, 181 Pa. 126) ; and children in a State institution and those who are not (Mansfield's Case, 22 Pa. Superior Ct. 224).

We are of opinion that the legislature did not in this act arbitrarily create a class of money lenders, loans and borrowers, where no real distinction existed between them and other lenders, loans and borrowers, but it recognized a class which had created itself and put a reasonable limitation of $300 on the class of transactions in which its members participated. As was said by Mestrezat, J., in Com. v. Grossman, supra: "They are in a class by themselves, and the legislature recognized the necessity of protecting the public against their dishonest practices."

Speaking for myself—it is a grave question whether it is not better to regulate by statutory enactment the evil that exists, rather than try to prohibit it and thereby create a body of lawbreakers. "Necessity knows no law" —and whether this necessity arises from misfortune or the foolish extravagances of the age, both are "conditions and not theories" with which we have to cope. Neither can be prevented by statutory law,

11, (1917).]          Opinion of the Court.

The judgment is affirmed, and the record remitted to the court below for purposes of execution, and to that end it is ordered that the defendant appear in that court at such time as he may be there called and that he be committed until he has complied with his sentence or any part thereof which had not been performed.

ORLADY, P. J., and HENDERSON, J., dissent.