Commonwealth Appellant, *v.* McDermott.
Commonwealth, Appellant, *v.* Levy and Tarcov.

Argued October 19, 1928.

Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP, and CUNNINGHAM, JJ.

*Thaddeus M. Daly, Jr.,* Assistant District Attorney, and with him *John Monaghan,* District Attorney, for appellant.—The Act of May 13, 1925, P. L. 644 is constitutional. Mahon v. Pennsylvania Coal Co., 274 Pa. 489; Roumfort Co. v. Delaney, 230 Pa. 374; Com. v. Brinton, 132 Pa. 69; Com. v. Grossman, 248 Pa. 11; Interstate Railway Company v. Massachusetts, 207 U. S. 79.

*Wm. F. Berkowitz,* for appellees.—The Act of May 13, P. L. 644, is special legislation and offends Section 7, Article III of the Constitution of Pennsylvania,

and contravenes the 14th Amendment of the Federal Constitution. Ayar's Appeal, 122 Pa. 266; Sayre Borough v. Phillips, 148 Pa. 482; Blankenburg v. Black, 200 Pa. 629; Commonwealth v. Shumaker, 255 Pa. 67; Commonwealth v. Zacharias, 3 Superior Ct. 264; Commonwealth v. Humphrey, 288 Pa. 280.

OPINION BY KELLER, J., November 14, 1928:

These appeals were argued on one brief and may be disposed of in one opinion.

Appellants were separately indicted for appealing to the public for funds and selling articles of merchandise to the public to raise money for an alleged charitable or benevolent purpose, without having obtained from the Department of Public Welfare of the Commonwealth a certificate of registration, contrary to the provisions of the Act of May 13, 1925, P. L. 644.[1] They entered separate pleas of 'nolo contendere,' but subsequently by leave of court withdrew these pleas and moved to quash the several indictments on the ground that the Act of 1925, supra, is unconstitutional as in conflict with Article I, section 1, and Article III, sections 3 and 7, of the Constitution of Pennsylvania.

---

Note 1.

Section 1 of said Act provides: "That thirty days after the approval of this act it shall be unlawful for any person, co-partnership, association, or corporation, except in accordance with the provisions of this act, to appeal to the public for donations or subscriptions in money or in other property, or to sell or offer for sale to the public any thing or object whatever to raise money, or to secure or attempt to secure money or donations or other property by promoting any public bazaar, sale, entertainment, or exhibition, or by any similar means for any charitable, benevolent, or patriotic purpose, or for the purpose of ministering to the material or spiritual needs of human beings, either in the United States or elsewhere, or of relieving suffering of animals, or of inculcating patriotism, unless the appeal is authorized by and the money or other property is to be given to a corporation, copartnership, association, or individual holding a valid certificate of registration from the Department of Welfare, issued as herein provided."

Subsequent sections regulate the application for and issuing of such certificates, and prescribe conditions under which such appeals for funds, etc., may be made.

The court below held that the title of the Act ("An Act relating to and regulating the solicitation of moneys and property for charitable, religious, benevolent, humane and patriotic purposes") was not in conflict with Article III, section 3, of the Constitution, on the authority of Snyder County v. Wagonseller, 262 Pa. 269; Cleary v. Quaker City Cab Co., 285 Pa. 241; and Com. v. Pflaum, 50 Pa. Superior Ct. 55; but sustained defendants' contention that the act was in conflict with Article III, section 7, forbidding the Legislature to "pass any local or special law ...... granting to any corporation, association or individual any special or exclusive privilege or immunity," by reason of the exemptions contained in the eleventh section of the Act;[2] and quashed the indictments. The Commonwealth appeals.

The Act itself does not purport to be a local or special law. It applies to the whole Commonwealth and is equally effective in every part thereof. It is general in its scope and purpose, and did not require the special notice prescribed by the Constitution (Art. III, Sec. 8) previous to the introduction and passage of local or special bills. If it is to be held in conflict with the Constitution, as forbidden special legislation, it must be because of the inherent effect of the exceptions from its provisions contained in the eleventh section; these must be held to be so arbitrary and unreasonable, as not to have been made in good faith or based on genuine and substantial distinctions, but for the purpose, and with the effect of

Note 2. Section 11.

"This act shall not apply to fraternal organizations incorporated under the laws of the Commonwealth, religious organizations, colleges, schools, universities, labor unions, municipalities, or subdivisions thereof, community organizations within the Commonwealth, nor to charitable institutions or agencies required by the provisions of existing law to file reports with the Department of Public Welfare or with any other department or office of the Commonwealth."

granting special privileges to certain favored corporations, associations and individuals.

The Act in question is clearly a police measure, and not an arbitrary interference with the natural rights of our citizens (Art. I, Sec. 1). It is designed to remedy a real mischief. The Legislature recognized that the general public had been victimized by persons appealing for funds for pseudo charitable, benevolent, humane and patriotic objects; by schemes cleverly contrived for the sale of goods and merchandise, ostensibly for the benefit of some such worthy object, but really for the private and selfish advantage of the solicitor and his associates, if any; that the charitable and benevolent instincts of its people were being preyed upon for selfish purposes by persons masquerading under charitable and benevolent cloaks, resulting in the defrauding of the public and injury to genuine charitable and benevolent institutions. In putting a stop to these practices it was important that nothing should be done to hinder, hamper or interfere with legitimate charitable and benevolent agencies.

The remedy adopted was regulation, by requiring written application, duly verified, to the Department of Welfare, which if it found the applicant a proper person, corporation, etc., and not inimical to the public welfare, and its appeal to be for truly charitable, benevolent or patriotic purposes, etc., should issue its certificate of registration; but if it found otherwise should refuse such certificate. Other regulatory provisions are contained in the Act, which it is not necessary to refer to here. And by the amending Act of April 18, 1927, P. L. 300, which was not in force when the acts complained of under these indictments were committed, it is provided that the Department of Welfare shall not issue its certificate to any individual, corporation, etc., which pays or agrees to pay a com-

mission or compensation in excess of 15 per centum of the amount collected, or the sale price of any article, etc.

It was, no doubt, recognized that requiring such written and verified application and certificate of registration, and the further regulation prescribed by the statute, in all cases, would needlessly interfere with the activities of many religious, charitable, benevolent and patriotic organizations, whose work had been long established in their communities and was well and favorably known therein, or was already subject to supervision by the Department of Welfare or some other department or agency of the Commonwealth, or whose operations were of such general and universal interest that the public were so well informed concerning them, that further or official supervision was not considered necessary. As before said, it was just as important that such legitimate religious, charitable, benevolent and patriotic organizations should not be hampered, hindered or needlessly interfered with in their work as it was that spurious ones should be banned from fleecing the public. Hence the 11th section of the Act. It exempts from its requirements nine classes of organizations, all long established as worthy of confidence in one or more fields covered by the Act and all carrying on their operations without complaint of fraud, deceit, or fraudulent purpose: (1) Fraternal organizations, incorporated under the laws of the Commonwealth; (2) religious organizations; (3) colleges; (4) schools; (5) universities; (6) labor unions; (7) municipalities or subdivisions thereof; (8) community organizations within the Commonwealth; (9) charitable institutions or agencies required by law to file reports with the Department of Welfare or any other department or office of the Commonwealth. Some of these would

scarcely need to be specially exempted, but are included out of abundant caution.

The learned judge of the court below took special exception to two of the exempted classes. He was of opinion that the exemption of religious organizations from the operation of the Act contradicted the provisions of the title, which makes the Act apply to solicitations for religious purposes. He unwittingly confused the 'purpose' with the 'organization.' The Act recognizes that there may be appeals for funds for 'religious purposes' made by persons or associations not authorized by nor connected with 'religious *organizations*' and it purposes to supervise their operations; but it has no design or intent to curtail the activities of churches and other bona fide religious organizations.. So too, he criticized the exemption of 'community organizations.' These are well understood to include 'community chests,' 'welfare federations' and other activities which are community wide in their endeavors and are so well known, and subjected to such general scrutiny that the chances of their being used to deceive or defraud the public are infinitesimal. It is hardly necessary to refer specially to incorporated fraternal associations, colleges, schools, universities, and labor unions, or hospitals, sanatoriums, and institutions already under the supervision of the Department of Welfare, the Department of Health, or some other agency of the Commonwealth. Their activities are of such a character and are so conducted as to furnish little chance of victimizing the public in their operations; while needless regulation would do them much injury, and perform no useful purpose. We are of one mind in our opinion that the exemptions are not arbitrary or unreasonable, but are based on genuine and substantial distinctions, having in mind the mischief to be remedied. In coming to this conclusion we are

guided by the decisions of the Supreme Court and prior judgments of this court in the following cases:

Com. v. Grossman, 248 Pa. 11, sustaining the constitutionality of the Act of June 19, 1911, P. L. 1060, providing for the licensing and regulating of private banking and exempting from its provisions bankers who have done business continuously in the same locality for seven years prior to the approval of the Act and who are not engaged in the sale of railroad or steamship tickets.

Com. v. Puder, 67 Pa. Superior Ct. 11; affirmed 261 Pa. 129, where the Act of June 17, 1915, P. L. 1012, regulating the business of loaning money in sums of $300 or less was held constitutional, differentiating the statute from the Act of June 5, 1913, P. L. 429, which was held unconstitutional in Com. v. Young, 248 Pa. 458.

Harris v. State Board of Optometrical Examiners, 287 Pa. 531, sustaining the acts regulating the practice of optometry and forbidding the peddling of eye glasses and the practice of optometry outside of and away from one's office or place of business.

Com. v. Heller, 80 Pa. Superior Ct. 366, affirmed 277 Pa. 539, which upheld the Act of May 5, 1915, P. L. 248, regulating the registration of veterinary surgeons.

Com. v. Finn, 11 Pa. Superior Ct. 620, construing and upholding the Act of May 18, 1893, P. L. 94, regulating the practice of medicine and surgery. See also Com. v. Densten, 30 Pa. Superior Ct. 631, affirmed 217 Pa. 423; Dent v. West Virginia, 129 U. S. 114.

Pulaski Twp. Poor Dist. v. Lawrence Co., 222 Pa. 358, sustaining the Act of March 6, 1903, P. L. 18, providing for the relief, etc., of indigent persons whose legal place of settlement is not known.

Leinbach's Est., 241 Pa. 32, sustaining the Act of

May 9, 1889, P. L. 168, providing for the adoption of *adult* persons, as distinguished from children.

Seabolt v. Commissioners, 187 Pa. 318, upholding the Bridge Act of May 6, 1897, P. L. 46.

We have examined all the cases relied on by the court below or cited by the appellees and we do not find any that requires us to hold this statute unconstitutional. They only decide that the several acts then under consideration, differing widely from this one in scope, subject matter and necessity for exemption, furnished no real ground for the distinctions or classifications sought to be established, but were arbitrary and unreasonable. Granted a proper and reasonable ground or basis for the distinction or classification made in the Act, or for the exemption allowed, and they do not apply.

In passing on the constitutionality of an Act of Assembly we are obliged to follow the rule laid down by our Supreme Court, and seek a construction which will support the legislative interpretation of the Constitution, if at all possible: Com. v. Snyder, 279 Pa. 234, 239; Collins v. Lewis, 276 Pa. 435. "In construing a statute the presumption is that it is a valid exercise of legislative power and the burden is upon one who attacks its validity to show a clear violation of the constitutional provision": Com. v. Puder, 261 Pa. 129, 136. In our opinion the exemption from the operation of the statute of the classes of organizations specified in section 11, is not an arbitrary and unreasonable distinction intended to grant special privileges to a favored few but is based on reasonable grounds, sufficient to justify the Legislature in excluding such organizations, etc., from the force and effect of the statute, if it saw fit to do so.

The necessity for the Act is apparent from the review of these defendants' operations contained in the opinion of the court below, to-wit: "It is con-

ceded that McDermott, one of the defendants, had formed two organizations, one known as the Blue Ribbon Company, and the other as Babies' Milk Fund. The former handled grocery products and made all the sales to the latter, which, in turn, sold them to the public by solicitation in which it was stated that the profits derived therefrom would be devoted to the purchase of free milk for poor families. The milk fund paid the Blue Ribbon Company fifty per cent of the gross receipts from sales, and, after deducting all expenses from the remaining fifty per cent, devoted the balance to charities. It appears that during a period of twenty-seven months the sum of $22,000 was collected from sales and only $862 of this amount used for the purchase of free milk. The other defendants formed similar organizations known respectively as the Philadelphia Standard Products Company, and the Children's Welfare Society. The former supplied the products which were sold through the latter in the same manner as the Blue Ribbon Company sold to the Babies' Milk Fund. It is undisputed that between January 1, 1927, and February 26, 1927, the sum of $6,575.07 was collected from proceeds of sales, of which amount only $343.62 was used for the purchase of free milk.'' The opinion also states that defendants had made application to the Department of Welfare for certificates of registration, under this Act, but the applications, after hearing, were refused.

The assignment of error in each appeal is sustained and the order is reversed, with a procedendo.

No. 262, October Term, 1928, order reversed with a procedendo.

No. 263, October Term, 1928, order reversed with a procedendo.